ITTNER v. HUGHES *et al.*; BLACKMER & POST PIPE COMPANY, *Appellant*.

### Division One, March 31, 1896.

1. **Mechanic's Lien:** PRACTICE. In an action to enforce a mechanics lien plaintiff may be permitted to recover "in any sum not exceeding the amount claimed in the demand filed with the lien." R. S. 1889, sec. 6715.

2. ———: ———: ABANDONMENT OF PART OF CLAIM. The fact that a lien account claims some items to be due by one as principal contractor, which are afterwards abandoned, does not vitiate the residue of the items of account, otherwise valid, where the lien claim appears to have been made in good faith.

3. ———: ———: SUBCONTRACTOR. The fact that the principal contractor has been paid in full constitutes no defense against a claim for a lien by a subcontractor.

4. ———: ———: ———: ASSIGNMENT OF ACCOUNT. The assignment of an account as collateral security, by a subcontractor, does not deprive him of the right to proceed to perfect his claim for a lien in his own name.

5. ———: ———: ACCOUNT: LUMPING CHARGE. An account filed to secure a mechanics lien held sufficient as against objections for want of proper dates and as containing a lumping charge.

6. **Practice:** WITHDRAWAL OF PART OF CLAIM: ADMISSION. A party may, at a trial, withdraw part of the claim made in his pleading or admit facts put in issue, and the court may then properly treat the dispute as narrowed to that extent.

7. **Appellate Practice:** ERRONEOUS GROUND FOR CORRECT RULING. It is the duty of an appellate court to affirm a correct result, or ruling, reached in the trial court, even though it may have been based on erroneous grounds.

8. ———: GRANTING NEW TRIAL, PRESUMPTION AS TO. An order for new trial, based on one ground of the motion, is deemed an overruling of the other grounds; and is assumed to be correct until a showing to the contrary is made.

Ittner v. Hughes.

9. ———: ERROR: PROPER VERDICT. Under the law in force when this action was begun, it was the duty of a party, appealing from an order for a new trial, to first show error in the granting of the order on the ground assigned of record for that ruling; but the party may also show that, notwithstanding any error of the trial court, the verdict was right as a conclusion of law.

10. ———: NEW TRIAL, CORRECT ORDER FOR: EXCEPTION. A party in whose favor a new trial has been ordered may, on his adversary's appeal, show that the order was correct upon any of the grounds stated in his motion for new trial whether they were sustained by the trial court or not. To do this it is not necessary for him to either except to, or appeal from, the order. *Bradley v. Reppell*, 133 Mo. 545, followed.

11. ———: ORDER FOR NEW TRIAL, AFFIRMANCE OF. The supreme court may affirm an order for a new trial though the error assigned in the proceedings may not be such as would have produced a reversal had the motion for new trial been denied. (Following *Bunyan v. Railway*, 127 Mo. 12.) To warrant reversal of an order for new trial it must appear that no error occurred that may possibly have been prejudicial to the party who applied for the new trial.

12. Practice: NEW TRIAL. A new trial should not be granted except for error that is prejudicial to the substantial rights of the complaining party upon the merits of the case.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Dawson & Garvin* and *Sim T. Price* for appellant.

(1) The appellant was entitled to a nonsuit. Plaintiff had joined in one notice, lien and petition, and in the same count in the petition, demands arising out of separate contracts, and between different parties, viz.: One contract (written), between Delaney Brothers and Hughes for the brick work, and an entirely separate and distinct contract (oral or implied), between Delaney Brothers and the appellant, the Blackmer & Post Pipe Company. This rendered the whole lien void. *O'Connor v. Railroad*, 111 Mo. 194; *Livermore v. Wrights*, 33 Mo.

31; *Driscol v. Hill*, 11 Allen (Mass.), 154; 15 Am. and Eng. Encyclopedia of Law, p. 142; *Schulenburg v. Robinson*, 5 Mo. App. 561; 2 Jones on Liens, sec. 1577; *Ib*. 1323; *Rietz v. Ghio*, 47 Mo. App. 287; *Kearney v. Wurdeman*, 33 Mo. App. 447; *Gauss v. Hussman*, 22 Mo. App. 115. (2) The account was not a just and true account as required by the statutes. The plaintiff's assignors knowingly and willfully included in their account against the principal contractor, Hughes, items aggregating $400 (the stone work), for which they knew Hughes was not indebted to them. This rendered the lien void. *Hoffman v. Walton*, 36 Mo. 613; *Kling v. Construction Co.*, 7 Mo. App. 410; *Uthoff v. Gerhard*, 42 Mo. App. 257. (3) There were no dates to the account, hence no lien. There was nothing to indicate which work was done last, the brick work or stone work, consequently nothing to show that the last of the brick work was completed within four months prior to the filing of the lien. *Coe v. Ritter*, 86 Mo. 277; *Standish v. Pettit*, 2 Mo. Legal News, No. 16, p. 442; *Rude v. Mitchell*, 97 Mo. 365; *Curless v. Lewis*, 46 Mo. App. 278. (4) The verdict was for the right party and should have been permitted to stand. (5) The instructions, all considered together, were without error. They were very favorable to the plaintiff. (6) Substantially all the testimony offered by plaintiff was admitted. The question was purely one of fact, with the most abundant evidence to sustain defendants' contention, all of which was developed in the plaintiff's own case, and the finding of the jury was conclusive. (7) Every lien of a subcontractor against the owner must be bottomed on a debt due by the contractor to him at the time of filing the lien. If he has no demand against the contractor, it necessarily follows that he has no right against the owner. It having been found by the jury as a fact that the demand on which the

alleged lien was founded had been absolutely assigned by Delaney Brothers to the plaintiff Ittner, long before the lien was filed, and that at the time the lien was filed, Ittner, and not Delaney Brothers, was the owner of the demand against Hughes, the alleged lien paper was a nullity. *O'Connor v. Railroad*, 111 Mo. 185; *Brown v. Railroad*, 36 Mo. App. 458; *Griswold v. Railroad*, 18 Mo. App. 52; *Bank v. Cramer*, 54 Mo. App. 587; *Erath v. Flynn*, 55 Mo. App. 107; *Tewksbury v. Bronson*, 48 Wis. 581. (8) A lien account which so mingles items for which the law gives no lien, with those for which a lien may be had, that they can not be separated upon a mere inspection of the account, is void. *Gauss v. Hussman*, 22 Mo. App. 115; *Murphy v. Murphy*, 22 Mo. App. 18; *Nelson v. Witherow*, 14 Mo. App. 270; *Edgar v. Salisbury*, 17 Mo. 271.

*H. M. Pollard* and *C. L. Mott* for respondent.

The court erred in modifying plaintiff's instruction as asked by interlining the words "and that prior thereto they had not sold or assigned said account to plaintiff." Plaintiff's instruction as asked correctly declared the law, in every respect, and particularly so as regarded the assignment of August 17, 1892. *Jones v. Hurst*, 67 Mo. 568; *Allen v. Mining Co.*, 73 Mo. 692. A sale is the transfer of the absolute or general property in a thing for a price in money. Benjamin on Sales, sec. 1. In a sale the essentials are the transfer of the absolute property in the article sold and a fixed price to be paid in money or its equivalent, whereas an assignment in its usual signification, and the jury was warranted in defining the term by its generally accepted meaning, in the absence of a legal definition by the court, has an entirely different meaning. "In mercantile transactions the term assignment is not used in the

sense of sale, but rather in contradistinction from it, being confined in its application either to transfers of a special kind, auxiliary to sales, or in completion of them, (such as assignments of bills of lading, of policies of insurance, etc.), or to transfers by way of security for or in the payment of debts. Indeed, in most of its applications, the term seems to imply the relation of debtor or creditor." Burrill on Assignments, sec. 1. So, then, the court told the jury that if Delaney Brothers had assigned the accounts to plaintiff before the lien was filed (which assignment was admitted in the sense above defined), then the jury must find for defendants. But that is not all; the court repeated the error in defendant's modified instruction which it gave. The court was not only justified in granting a new trial but it could not justly do otherwise. Whatever construction may be placed on the verdict, the trial court had but one duty when he believed it was against the law and the evidence, and that was to set it aside. And when upon due deliberation he found he had erred in the instructions he gave, he had another sufficient reason to set aside the verdict. This court has often held that it will not revise the discretion of the trial court in granting a new trial except in cases free from doubt.

BARCLAY, J.—This action was begun, May 3, 1893, to enforce a mechanics' lien against certain land in the city of St. Louis, and to obtain judgment against the chief contractor for the work for which the lien is claimed. At the trial a verdict for defendant, the landowner, was returned on the issue of the lien.

Plaintiff moved for a new trial, which the learned trial judge granted. The defendant, in whose favor the verdict had been given, appealed, in the usual way.

 The plaintiff sues as assignee of an account in favor of the Delaney brothers who were subcontractors

for work upon a large building owned by the Blackmer & Post Pipe company, one of defendants. The principal contractor was Mr. Hughes (the other defendant) with whom Delaney brothers dealt in reference to their work, according to the petition. That pleading presents an account and allegations to show an indebtedness of Hughes for various items of work and labor. The account is as follows:

"All materials furnished and work done between the 20th day of August, 1892, and the 1st day of March, 1893, the last work having been done on March 1st, 1893.

| | |
|---|---:|
| 54 perch rubble stone work at $4............ ............ | $ 216.00 |
| 8 yards dimension stone at $8 ............................ | 64.00 |
| 12 yards concrete at $8................................... | 96.00 |
| Excavation for piers and boiler house walls ................ | 24.00 |
| Removing, raising and lowering 18 window and door frames, extra........ ..... ........ ....................... .. | 200.00 |
| 1,089,362 brick laid on wall at $11.73 per M............... | 12,800.00 |
| | $ 13,400.00 |
| Credit by cash.................................... .... | 9,385.89 |
| Balance due... ..................................... | $ 4,014.11 |

"All of which work was done and materials furnished between August 20th, 1892, and March 1st, 1893, the last thereof having been done March 1st, 1893, when said account accrued. That all of said work and materials went into the construction of said building."

The petition then avers the taking of necessary steps for a lien, including a notice, April 22, 1893, to the Pipe company of intention to file the lien. The lien account was filed, May 3, 1893; and the assignment by Delaney brothers to plaintiff is alleged as of that date, "after having filed said lien." Judgment for $4,014.11 with interest was demanded.

The petition is not challenged except at certain

points.    As to them, the foregoing outline will be found sufficient.

The amended answer denied the petition generally, and also set up the fact that Delaney brothers had absolutely assigned their account to plaintiff long before the filing of their lien; and that they were consequently not entitled to a lien when the same was filed.

Defendant Hughes made no answer.

The reply denied the new matter alleged by the Pipe company.

When the case came to trial (a jury having been called) plaintiff read in evidence the notice of lien without objection. When the lien was offered, objections were made which the court overruled. The substance of the objections is that the credits are lumped in a single item; that the items of work are not sufficiently stated; that the date of the last work is not clearly given; and that no application of the credits appears to have been made to any particular part of the general account stated in the petition.

The lien statement of account was identical with that of the petition above quoted; but it had an appropriate caption showing Hughes as contractor, the Pipe company as owner and Delaney brothers as subcontractors, claimants.

In the early stages of the trial, plaintiff withdrew the claim for a lien for the stone work, excavation and extras, and asked solely for a lien for the brick work. He took this course after the testimony had developed the facts that the original written contract between the Delaney brothers and Hughes did not include clearly these items, though the work and materials represented by them had been in fact done and furnished by the Delaney brothers, but not as subcontractors. Those items of work and material were furnished (so plaintiff considered) under a distinct contract with the Pipe

company; but there was testimony to show that they were reasonably worth the prices claimed, and that the materials and labor went into the building and improvement of the company; there was some testimony that Hughes directed it and the representative of the company sanctioned it, but plaintiff appears to have thought it safer to withdraw the claim, presumably because the work was outside the contract of the company with Hughes.

On that exhibit of facts, plaintiff, at all events, saw proper to abandon his claim for lien as to all items except the brick work, which was shown to have been done as alleged. There was proof further that the price charged therefor was reasonable.

It also appeared from plaintiff's testimony that the brick work was completed in March, 1893; and that the company refused payment of the demand on the ground that the principal contractor, Hughes, had already been fully paid for the whole work according to his contract.

Plaintiff at the trial also withdrew his claim for a money judgment against Hughes, as to all the items except the brick work, notwithstanding Hughes was in default and had made no answer.

The verdict for plaintiff was for $3,414.11 against Hughes, and in favor of the Pipe company on the lien.

Much testimony was introduced which need not be recited in view of the nature of the issue presented by the present appeal from the order granting plaintiff a new trial.

It is enough now to say that "the sole contested issue of fact was raised by the affirmative defense set up in the appellant's amended answer, viz: Whether the claim of Delaney brothers against the principal contractor, Hughes, had been assigned to plaintiff before the filing of the mechanics' lien, and whether at

the time the lien was filed, Ittner, the plaintiff, or De-
laney Brothers, was the owner of the demand.   It was
conceded that the demand had been transferred to
Ittner long before the lien was filed, but, on behalf of
the plaintiff, it was contended that such transfer was a
mere pledge, and by the appellant, that it was an abso-
lute transfer.   There was testimony to support both
contentions.''

The quotation is from appellant's statement in
this court.   It will be taken to sufficiently indicate the
dispute now submitted for decision.

The learned trial judge assigned, as the reason for
granting the new trial, error in the instructions given.

It does not appear necessary to copy the instruc-
tions at large.

The court modified the leading instruction asked
by plaintiff by adding the words indicated by italics
in the following passage therefrom: viz: ''and if you
further believe from the evidence that said Delaney
Brothers, or either of them, acting for said firm, after
giving the said notice, and filing the lien and account
read in evidence, assigned for value their said lien and
account to plaintiff, *and that they had not prior there-
to, sold or assigned said account to plaintiff*, then the
Court instructs you that plaintiff is entitled to a me-
chanic's lien upon the premises described in the lien
read in evidence for such sum as you may find from
the evidence to be due him in the case for said item—
1,089,362 brick laid in the wall.''

On the same point the court gave the following
instruction on behalf of defendant, the Pipe company:

''If the jury shall find from the evidence that
Delaney Brothers had assigned their claim against
Hughes to plaintiff Ittner before the lien introduced in
evidence in this case was filed, then the Court instructs
the jury that the plaintiff is not entitled to recover a

lien as against the defendant, the Blackmer & Post Pipe Company, and their verdict must be for defendant as to the lien. But you are further instructed that the paper dated August 17th, 1892, read in evidence in all its parts does not constitute an assignment from Delaney Brothers to plaintiff of the account in question, unless you further find and believe from the evidence it was so intended and treated by the plaintiff and said Delaney Brothers.''

1.   On such an appeal as this, based on the recent statute (section 2246 as amended by Laws, 1891, p. 70, which was the law in force when this action began) it devolves on the appellant, who complains of the order for a new trial, to show that the ground assigned of record for that order is untenable.   He is not bound to go further and demonstrate that the other reasons (advanced in the motion for new trial) are without merit.   Those reasons are deemed to have been overruled by the trial judge; and until a showing is made of error in so ruling, his action is taken to be right.   This is the clear purport of the ruling of the court in banc in *Bradley v. Reppell* (1896) 133 Mo. 545 (32 S. W. Rep. 645, and 34 S. W. Rep. 841), which we consider authoritative.

''If, however, the party, in whose favor the order for new trial goes, can make it clear, from the record brought up (on his adversary's appeal), that that order was right, for reasons (assigned in his motion) other than those on which the trial judge based the order, he may then secure an affirmance, on the general principle that an appellate court should always sustain a correct result though it may have been brought about by an erroneous process of reasoning.

To obtain the benefit of such a view of the record, on an appeal, it is not necessary for the party who obtained the order for new trial, to except to, or appeal

from, the order. What need of an exception on his part when he has obtained what he demanded? If his adversary seeks to have the order reviewed, the successful party to the order should, however, see to it that the final record discloses the matters on which he relies to sustain the result of the circuit ruling.

On the other hand, if the party, who appeals from the order directing a new trial, can establish that, notwithstanding any error assigned by the trial court, or by his adversary, the verdict was right, as a conclusion of law, then the appellant is entitled to have his appeal sustained, and the order for new trial vacated.

It is not every error in circuit proceedings that will warrant another trial. To produce that effect, under Missouri law, the error must have occasioned an improper or unjust result; it must have been prejudicial to the substantial rights of the complaining party upon the merits of the cause. R. S. 1889, secs. 2240, 2303, 2100.

2. Relying upon the proposition last above stated, appellant insists that the verdict for defendant on the lien issue was right, as a matter of law, and should therefore not be disturbed, irrespective of any alleged error in the instructions.

Going into particulars, the defendant Pipe company argues that plaintiff can not maintain a claim for a lien because he has "joined in one notice lien and petition, and in the same count in the petition, demands arising out of separate contracts, and between different parties, viz: One contract (written) between Delaney Brothers and Hughes for the brick work, and an entirely separate and distinct contract (oral or implied) between Delaney Brothers and the appellant, the Blackmer & Post Pipe Company. This rendered the whole lien void," as defendant's counsel declare.

No such objection is sustainable by anything appearing on the face of the paper filed as a lien by the Delaney brothers. But defendant insists that under the evidence the objection is good.

The true question on the proof is whether the lien account will sustain a finding of lien as to the brick work for which alone plaintiff asks such a finding.

It is competent for a party, at the trial, to withdraw a part of his original claim as set forth in his pleading. The court, on such an announcement, may properly treat the issues as narrowed to that extent, just as a party may by an admission at the trial, dispense with the necessity of evidence of a fact put in issue by the pleadings, and thus put the actual controversy into a smaller compass.

A mechanic's lien suit forms no exception to the rules just stated. Plaintiff may withdraw at the trial a part of his claim for lien if in so doing he does not vitiate the effect of the demand on which he desires then to proceed. The statute permits a judgment "in any sum not exceeding the amount claimed in the demand filed with the lien." R. S. 1889, sec. 6715.

The facts of the case at bar indicate that it is a close question whether the other work done by Delaney brothers, beyond their brick work, was within the scope of the contract of Hughes construed as interpreted by the various parties in interest. There is no question but that the work was properly done for the advancement of the building. There was, at least, ample evidence tending to show that the lien claim was made in good faith, and we consider that it is sufficient as against the first objection of defendant.

3. The next objection of vital reach is that the account is not a just and true account as required by the statute, because Delaney brothers made a claim therein against Hughes for over 400 dollars worth of stone work,

which they knew he was not liable for. The comments already made are an answer to that objection, and it may be added that Hughes, by filing no denial, admitted his own liability for the stone work. Notwithstanding Hughes' default to, and admission of, the petition, plaintiff voluntarily withdrew from the case (as against Hughes also) that part of the demand for which he asked no lien.

4. The absence of dates on the face of the account is also urged as a fatal objection to the lien. We do not sustain that objection. The statement shows that the labor and materials were furnished between given dates, and that is a sufficient dating for the purposes of the lien account for the item of brick, which is now the only item in litigation. We consider further discussion of this point unnecessary, beyond a reference to the decisions upon it. *McDermott v. Claas* (1891) 104 Mo. 22 (15 S. W. Rep. 995); *Grace v. Nesbitt* (1892) 109 Mo. 9 (18 S. W. Rep. 1118); *Walden v. Robertson* (1894) 120 Mo. 38 (25 S. W. Rep. 349).

5. The fact that the principal contractor has been paid in full constitutes no defense against the claim of the subcontractor for a lien, otherwise conforming to the law on this subject. *Henry, etc., Co. v. Evans* (1889) 97 Mo. 47 (10 S. W. Rep. 868).

6. The error for which the learned circuit judge directed a new trial consisted in the modification of one of plaintiff's instructions in such a way as to convey the impression that if the account of Delaney brothers was assigned (for any purpose) to plaintiff, before it was filed by them as a lien, plaintiff could not recover.

Plaintiff had admitted an assignment prior to the time the lien was filed, but he claimed that that assignment was only as collateral security; that the bene-

ficial ownership was still in Delaney brothers until after their lien was perfected, when an absolute transfer of the account took place. So that the court's instruction cut the ground from beneath plaintiff's feet, so far as that trial was concerned.

The idea embodied in the modification of plaintiff's instruction was then emphasized in the instruction given for defendant above quoted.

We are of opinion that the assignment of an account by a subcontractor, merely as collateral security, does not deprive the assignor of his right to proceed to perfect his claim for lien in his own name.

The bearing of the error of the trial court on the result in this instance could best be determined by that court.

It has been already held, under the law touching appeals from orders awarding new trials, that this court may properly affirm such orders for errors that would probably not have been regarded as sufficient here to secure a reversal had the motion for new trial been overruled. *Bunyan v. Citizens' R'y Co.* (1895) 127 Mo. 12 (29 S. W. Rep. 842). To warrant reversal of an order for new trial it must clearly appear that no error occurred that may possibly have been prejudicial to the party who applied for the new trial.

The judgment should be affirmed. It is so ordered. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.