ITTNER v. HUGHES et al., Appellants.

Division One February 5, 1900.

154   55<br>96a ¹ 81

1. **Mechanic's Lien:** ORDERS TO PAY. Where orders of the sub-contractor to the lot owner, asking him to pay to plaintiff "such sums and at such times as payments become due and payable" under his contract, are not on their face absolutely assignments of the amounts then due, the court should not give an instruction to the effect that the orders were absolute transfers of the fund to the plaintiff, but leave the matter for the determination of the jury under proper instructions.

2. ———: ———: ASSIGNMENT. If the materialmen still have an interest in the money due from the landowner they can file their lien, in spite of the fact that they had previously given a written order to the owner to pay a third party, the plaintiff, "such sums and at such times as payments become due and payable," and this order had been accepted and some payments had been made on it.

3. ———: ASSIGNMENT. A sub-contractor who has furnished materials or performed work may file his lien and then assign the debt and lien account, and the assignee may prosecute the suit on the lien account to judgment in his own name.

4. ———: ———: COLLATERAL SECURITY. The sub-contractor may assign the moneys coming to him, as collateral security, and without re-assignment to him file a mechanic's lien, and then assign them absolutely, and the assignee will be entitled to the benefit of a mechanic's lien.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft*, Judge.

AFFIRMED.

*Dawson & Garvin* for appellants.

(1) As there was no reassignment to Delaney Bros. of any interest in what was coming under this subcontract prior to the filing of the lien and the making of the assignment of May 3d, it follows that Delaney Bros., on May 3d, had been

paid in full by the assignment to Ittner, and had no claim under their contract with Hughes for which they could file a lien, or which they could assign to plaintiff, so that the lien and the assignment of May 3d, sued on by plaintiff, conveyed to plaintiff nothing on which he could recover in this action and the trial court should, therefore, have given the instruction asked by this defendant that the plaintiff could not recover. Turner v. Kerr, 44 Mo. 435; State to use v. Kock, 40 Mo. App. 639; Moon v. Keep, 5 Mo. App. 593; Cobb v. Day, 106 Mo. 289; Holmes v. Fresh, 9 Mo. 209; McDermott v. Life Ass'n, 24 Mo. App. 75; Hunt v. Hunter, 52 Mo. 268; Link v. Harrington, 41 Mo. App. 641; State to use v. Bell, 2 Mo. App. 103; Thompson v. Irwin, 42 Mo. App. 419; Gibson v. Lenane, 94 N. Y. 187; 1 Parson's Contracts, 221; O'Connor v. Railroad, 111 Mo. 192; Griswold v. Railroad, 18 Mo. App. 52; Benham v. Bldg. Co., 60 Mo. App. 35; Ray Co. Sav. Bank v. Crosner, 54 Mo. App. 593; Allen v. Mining Co., 73 Mo. 688; Jones v. Hurst, 67 Mo. 568; Brown v. Railroad, 36 Mo. App. 458. (2) The evidence does not show that either Hughes or this defendant, the Pipe Co., was a party to the agreement between Delaney Bros. and Ittner, that the assignments of August 17 and November 10, should be collateral; or that either Hughes or this defendant, the Pipe Co., knew of or assented to or ratified the same at any time, either before or after the execution of the assignments by them. Hence this contract between Delaney Bros. and Ittner, that the assignment of August 17 and November 10 should be collateral, was a separate and independent secret contract between themselves, not forming a part of, or affecting in any way, the contract to which Hughes and this defendant were parties contained in the assignments of August 17 and November 10; because, first, neither Hughes nor the Pipe Co. were parties to it, nor acquiesced in nor ratified it, and second, because one party to the contract can not be affected by a secret and independent contract between the other parties thereto, and the

jury should have been so instructed.    Hunt v. Hunter, *supra*;
Link v. Harrington, *supra*; State to use v. Bell, *supra*; Thompson v. Irwin, *supra*; Cobb v. Day, *supra*; Holmes v. Fresh, *supra*; Turner v. Kerr, *supra*; Moon v. Keep, *supra*; McDermott v. Life Association, *supra*.

*H. M. Pollard* and *C. L. Mott*   for  respondent.

(1)   Appellant's second point has already been decided
by this court and it stands *res judicata.*   Ittner v. Hughes,
133 Mo. 679.   The only question at law in this case has been
therefore adjudicated by this court and stands to-day *res
judicata.*   (2)   And the only question of fact in the case
was, whether the orders of August 7th and November 10th
were given to respondents as collateral securtiy or whether
they constituted an absolute transfer to him.   This issue was
submitted to the jury under an instruction approved by this
court, when this case was here before, and this court will not
go behind the verdict of the jury to review the evidence had
it not already been decided.

ROBINSON, J.—This is an action to enforce a mechanic's lien, instituted by the plaintiff as assignee of Delaney
Bros.   The defendant Hughes entered into a contract with
the Blackmer & Post Pipe Co., to furnish the material and
construct a certain building for a manufacturing establishment in the city of St. Louis.   Afterwards Hughes contracted
with Delaney Bros., a firm composed of Daniel Delaney and
Jerome Delaney, to furnish the materials and do the brick and
stone work for said building, Delaney Bros. purchasing the
brick therefor from the plaintiff.   After finishing their work,
Delaney Bros. filed their mechanic's lien, and afterwards, on
the third day of May, 1892, assigned said lien and their claim
against the pipe company to the plaintiff.

The petition sets out facts sufficient to establish a mechanic's lien in favor of Delaney Bros., and avers the assign-

ment by Delaney Bros. of the indebtedness mentioned in the lien papers, and their claim and lien to the plaintiff, who, the petition avers, is the owner and holder thereof, and concludes with a prayer for judgment for $4,014.11, with interest from March 1, 1893, together with costs, and that the same be declared a lien upon the pipe company's property.

Hughes filed no answer, but the pipe company interposed a general denial and then set up a special defense that prior to the filing of the mechanic's lien by Delaney Bros. the latter had assigned and transferred absolutely to plaintiff the account on which the lien was founded, and consequently were not entitled to a mechanic's lien.

The plaintiff replied, denying generally the new matter contained in the answer.

The case was tried by a jury, under instructions hereinafter set forth, and resulted in a verdict and judgment in favor of the plaintiff for $4,146.43, and establishing a mechanic's lien therefor against the pipe company's factory, and, after an unsuccessful motion for a new trail, the pipe company appeals.

The main controversy between the plaintiff and the pipe company is whether or not certain orders of date respectively August 17 and November 10, 1892, given by Delaney Bros. to plaintiff, constituted an absolute transfer of all the interest in the funds coming to Delaney Bros. for work and material furnished and used in the construction of the pipe company's manufacturing establishment, or whether such orders were given as collateral security for debts owing by Delaney Bros. to plaintiff, the plaintiff contending that the orders in question did not convey absolutely the entire interest of Delaney Bros. in the moneys coming to them for their work and material but only gave the plaintiff the right to draw the same from the pipe company, and were given simply as collateral security for certain indebtedness of Delaney Bros. to plaintiff. The appellant on the other hand maintaining that the orders of

August 17 and November 10 operated as an absolute assignment of all Delaney Brothers' claim under their subcontract, and consequently the mechanic's lien was void, and the assignment thereof to plaintiff gave him no standing whatever to enforce same.

To review the evidence would require time, not necessary to a proper disposition of the questions involved in this appeal. It suffices to say that there was testimony tending to support both contentions. This question was submitted to the jury under the following instructions, given at plaintiff's instance:

"1. The court instructs the jury that if you believe from the evidence that Daniel Delaney and Jerome Delaney were copartners, doing business as Delaney Bros., and that they furnished the material and performed the work and labor for laying 1,089,362 brick in the wall mentioned in the lien account read in evidence, under the contract with defendant Hughes; and that said Delaney Bros., or either of them, acting for the firm, assigned for value to plaintiff, their right in and to said account, then you are instructed that you will find for the plaintiff, and against defendant Hughes, and assess plaintiff's damages at such sum as you may believe from the evidence to be a fair, reasonable value for said material and work and labor, not exceeding $12,800, less such payments as you may find were made by defendant Hughes, or any one for him, to said Delaney Bros., or plaintiff, on account of said materials and work and labor together with interest from April 22, 1893, at 6 per cent per annum.

"And if you further believe from the evidence that defendant Blackmer & Post Pipe Company was the owner of the premises described in the lien read in evidence, and that it contracted with said Hughes to erect the building, boiler house and smoke stack, including the brick work mentioned in said lien, and that said Delaney Bros. under contract with said Hughes, furnished the materials, and performed the work and labor for laying 1,089,362 brick in the wall, set forth in the

lien account for said building, boiler house and smoke stack, and that said materials and said work and labor actually entered into the construction of the same and were furnished and performed at the times mentioned in said lien account, and that the prices charged therefor in said account are reasonable, and if you further believe that said Delaney Bros., or either of them, acting for said firm, within four months after the accruing of said account, filed in the office of the circuit court of the city of St. Louis, Missouri, a just and true account of the demand due them, after all just credits had been given, together with the names of the owner and contractor, and a true description of the property sought to be charged with the lien, all verified by affidavit, and that more than ten days prior to the filing of said lien, said Delaney Bros., or either of them, acting for said firm, gave notice in writing to the Blackmer & Post Pipe Company for their demand, the amount due and from whom due, and of their intention to file a lien for the same under the mechanic's lien law, and that this suit was begun within ninety days after the lien read in evidence was filed; and if you further believe that said Delaney Bros., or either of them, acting for said firm, after giving the said notice, and after filing said lien and account for value received, assigned said lien and account to plaintiff, then the court instructs you that the plaintiff is entitled to a mechanic's lien upon the premises described in the lien, for such a sum, if any, as you may find from the evidence to be due him in the case; that is to say, for such a sum as you may find from the evidence in the case to be due from defendant Hughes on account of said materials and work and labor so furnished and done by Delaney Bros., as set forth in the lien account.

"2.    And the court further instructs that you will so find, notwithstanding you may believe from the evidence that said Delaney Bros., or either of them acting for the firm, prior to the giving of said notice to the owner and filing of said lien, did order and direct said Hughes or said owner in writing to pay

to plaintiff the payments then due or thereafter to become due to said Delaney Bros., under the contract between them and said Hughes, for furnishing said materials and performing said work and labor, and that plaintiff did receive payments, or portions of payments, on orders drawn by said Hughes in plaintiff's favor on the owner, as the said payments fell due, and were paid to the said Delaney Bros. under the terms of said contract; provided you further believe from all the facts and circumstances shown in evidence, including such orders, that they were executed and delivered by Delaney Bros. to and received by plaintiff as security for such sums as Delaney Bros. then owed or might thereafter owe the plaintiff, and that the balance, if any, of said several payments as they fell due and were paid to the plaintiff after he had retained sufficient to pay whatever indebtedness Delaney Bros. might then owe him, was to remain the property of said Delaney Bros. and to be paid to them, or either of them by plaintiff.

"The jury are instructed that they must determine from all the facts, circumstances and evidence in the case whether the orders in evidence of date August 17, and November 10, 1892, were intended by Delaney Bros. and plaintiff as security for money then owing by Delaney Bros. to plaintiff and for future advances by plaintiff to them, or were intended as an absolute sale and transfer of all payments due and to become due to Delaney Bros. for work and material done and furnished the Blackmer & Post Pipe Company building.

"The court instructs the jury that if they believe from the evidence that the orders of August 17 and November 10 were executed by Delaney Bros. to and received by the plaintiff as collateral security for such sums, if any, as said Delaney Bros. were then owing or might thereafter owe to plaintiff, and that it was the purpose, agreement and intention at the time of the delivery to Delaney Bros. and receipt by plaintiff of said orders, that plaintiff was to hold them as collateral security for the indebtedness of Delaney Bros. to the plaintiff, then the

court instructs you that neither Delaney Bros. nor plaintiff acting alone and without the consent, either expressed or implied, of the other party, could by any claim or representations, change the nature of said orders from that of collateral security, if you find they were given as above stated as collateral security, to an absolute one of sale and transfer of the interest of Delaney Bros. in and to the payments mentioned in said orders.

"The court instructs the jury that under the law of this State, although you may believe from the evidence that the defendant Blackmer & Post Pipe Co., has paid the defendant, Alex. Hughes, the full contract price for the erection of the improvements mentioned in the evidence, still such fact constitutes no defense to his claim, and your verdict will be for plaintiff, establishing his mechanic's lien against the property mentioned in the petition and owned by defendant Blackmer & Post Pipe Co., provided you believe he is entitled to a mechanic's lien under the other instructions given you by the court."

And of its own motion the court gave the following:

"1.   The court instructs the jury that if they shall find and believe from the evidence that prior to the third day of May, 1893, the plaintiff Ittner had acquired from Delaney Bros. the absolute ownership of the debt due them from Hughes on their contract with him and did not hold the same as collateral security merely, then Delaney Bros. had no right to a lien against defendant, the Blackmer & Post Pipe Co.'s property, and the lien paper filed by said Delaney Bros. on the third day of May, 1893, and the subsequent assignment in writing thereof to plaintiff Ittner, were and are of no validity, and that the plaintiff is not entitled to a mechanic's lien against the property described in the petition.

"2.   The court instructs the jury that in order to entitle Delaney Bros. to perfect a mechanic's lien against the property

of the defendant, the Blackmer & Post Pipe Company, those two things must have occurred:

"1st. The defendant, Hughes, must, at the date said mechanic's lien paper was filed, have been indebted in some amount on his contract with said Delaney Bros.

"2d. Said Delaney Bros., must at that time, have been the owner of said debt against said Hughes.

"No one except Delaney Bros. ever had any right to file a mechanic's lien, based on the debt of Hughes to them, and in order to sustain the lien sought to be enforced in this case, the jury must find from the evidence that Delaney Bros. had not parted absolutely with their right to the debt due them from the defendant Hughes; hence, if you find and believe from the evidence that the orders given by Delaney Bros. to plaintiff Ittner, and dated respectively August 17, and November 10, 1892, were given by them and accepted by plaintiff Ittner, with the intention of passing to the plaintiff Ittner, all of their right and interest in the payments that were then due, or might thereafter become due, to them from said Hughes, and not merely as security for their own indebtedness, then due, or to become due, to the plaintiff, then the plaintiff is not entitled to a mechanic's lien in this case against the property in question."

These instructions when taken together, contain a clear and accurate statement of the law governing the case. It is difficult to see how they could have been more explicit, and, in our opinion are not obnoxious to the criticism leveled against them by appellant. Moreover, the principles enunciated therein substantially met the approval of this court when this case was here on a former appeal. [Ittner v. Hughes, 133 Mo. 679.]

But counsel for defendant asked several instructions which the trial court refused to give, except as their contents in part are contained in the instructions given at the court's own instance. It is unnecessary to set out the appellant's

refused instructions here.    Indeed, only one of them requires special notice.   It may be correctly said of them as a whole that, in so far as they enunciate legal propositions applicable to the case, they were fully covered in the instructions given by the court's own motion.   The appellants' second instruction just referred to was to the effect that the orders of August 17 and November 10, given by Delaney Bros. to plaintiff, directing the payment to the plaintiff of all sums due  or to become due on their contract with Hughes, taken in connection with the acceptance thereof by Hughes and the pipe company, on their face, constitute an absolute assignment to plaintiff of all the indebtedness from Hughes to Delaney Bros. growing out of the contract referred to in said orders.   These instructions were properly refused.   In our opinion, the orders in question do not on their face constitute an absolute transfer of the lien account to plaintiff, but merely authorize him to receive the payments due or to become due from Hughes to Delaney Bros.   The order of August 17 is addressed to Hughes and simply requests him to give plaintiff an order on the pipe company, to collect the payments coming to Delaney Bros. under their contract for brick work, which was accepted by Hughes.   The order of November 10 is written on the same sheet of paper as that of August 17, and is as follows:

"The purpose of the following certificate is to make the above certificate more plain and definite.

"Blackmer & Post Pipe C.        .

"Gentlemen:—Pay to Anthony Ittner, the payments due us on our contract for the brick and stone work on your new factory, now in course of erection, in such sums and at such times as said payments become due and payable under said contract, and charge same to our account.   Delaney Bros."

Manifestly these orders do not purport to transfer anything to plaintiff; they are simply orders on the Pipe Co. to pay plaintiff certain payments due Delaney Bros. under their contract with Hughes.   There is nothing here indicating an

absolute transfer of the fund to the plaintiff; on the contrary, it is just such an order as an employer might give his employee to enable the latter to collect for the former any designated funds due the employer from a third person.

Counsel for appellant argue in their brief that aside from what appeared on their face the pipe company had no knowledge of the nature of these orders, and consequently the trial court erred in permitting plaintiff to prove by oral evidence that they were given as collateral securtiy for the indebtedness owing by Delaney Bros. to the plaintiff and for such advances as the latter might thereafter make to them. As before seen, the orders do not purport on their face to be an absolute transfer, but simply authorized plaintiff to receive certain moneys due from Hughes to Delaney Bros.; but even though they were absolute on their face it does not necessarily follow that it could not be shown by parol evidence what the real nature of the orders as between plaintiff and Delaney Bros. was. The evidence shows that the pipe company, never paid plaintiff any money on the orders that it would not have paid Delaney Bros. had no such orders been given. Besides, it further appears that the full contract price as between the original contractor, Hughes and Delaney Bros. has never been paid. It is not claimed that the pipe company has waived any legal right because of the agreement between plaintiff and Delaney Bros. that the orders were to be given as collateral security. Apart from the wording of the orders there was testimony tending to show that the pipe company knew that the order was given as collateral security and not as an absolute transfer. It seems that on three different occasions when payments were made, after the execution of these orders, the pipe company deducted from the payment to be made plaintiff various sums owing the pipe company by Delaney Bros. In our opinion, therefore, Delaney Bros. had sufficient interest in the account to enable them to file their lien

papers, notwithstanding the orders of August 17 and November 10.

It may be regarded as entirely settled in this State that a subcontractor who has furinshed materials or performed work and labor may file his lien and then assign the debt and lien account, and the assignee may prosecute the suit on the lien account to judgment in his name. [Goff v. Papin, 34 Mo. 117; Jones v. Hurst, 67 Mo. 568; Allen & Co. v. Frumet Mining Co., 73 Mo. 688; O'Connor v. Railroad, 111 Mo. 192.]

It is also clear as announced by this court, when this case was here on its former appeal, that a subcontractor may assign the moneys coming to him for his work and material as collateral security, and without any reassignment to him file a mechanic's lien, and then assign it absolutely, and the assignee will be entitled to the benefit of the lien, and may maintain suit to enforce it in his own name. [Ittner v. Hughes, 133 Mo. 679.]

When this case was here before, BARCLAY, J., speaking of this precise question, under substantially the same state of facts, said: "Plaintiff had admitted an assignment prior to the time the lien was filed, but he claimed that that assignment was only as collateral security; that the beneficial ownership was still in Delaney Brothers until after their lien was perfected, when an absolute transfer took place." The opinion then proceeds: "We are of the opinion that the assignment of an account by a subcontractor, merely as collateral security, does not deprive the assignor of his right to proceed to perfect his claim for lien in his own name."

An examination of the other points relied upon by the appellant for a reversal of the judgment has satisfied us that they are devoid of merit and ought not to be sustained. There being no reversible error in the record, the judgment of the circuit court will be affirmed. *Brace, C. J., Marshall* and *Valliant, JJ.,* concur.