CHARLES KASPER, Respondent, v. ST. LOUIS TERMINAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 14, 1903.

1. **Lien for Wages and Material**: RAILROAD: FORECLOSURE OF LIEN: PETITION GOOD. A petition alleged that a certain person had a contract for grading a railroad, that another had a subcontract for part of the route, and that plaintiff did certain specified work under the latter. The portion of the roadbed was described, and the petition stated that in ninety days after the completion of the work the workmen filed true accounts of their claims with the circuit court clerk, copies of which were served on the company and then concluded each count with a prayer for judgment against the railroad company, and that a lien be enforced against its property for the amount of wages shown to be due. *Held* that it was good to foreclose a lien for labor and material, notwithstanding the prayer also demanded relief against the railroad company.

2. ———: ———: ACCOUNT TO BE FILED, WHEN: R. S. 1899, SECS. 4241 and 1057, CONSTRUED, NOTICE. Revised Statutes 1899, section 4241, provides that a person claiming a lien against a railroad must file an account with the circuit court clerk of any county through which the road runs within ninety days after the completion of the work, and must serve a copy thereof on the company within that time. Section 1057 provides that a laborer who does work on a railroad under a contractor, and is not paid, may, within twenty days after the performance of the work, give notice to the company, and then sue it for his wages, and recover personal judgment. Held, that no twenty-day notice was necessary to the creation of a lien in favor of laborers employed by a subcontractor to grade the roadbed.

Kasper v. St. Louis Term. Ry. Co.

3. ———: "JUST AND TRUE ACCOUNT" DEFINED: R. S. 1899, SEC. 4241, CONSTRUED. Revised Statutes 1899, section 4241, requires that a person claiming a mechanic's lien against a railroad must file "a just and true" account, etc. *Held*, that the fact that an account omitted a credit due from a laborer for feed for his team, amounting approximately to $23, but of which the laborer testified he was unable to get a statement, did not invalidate it as a just and true account.

4. ———: ———: NEW CONTRACT. A raise of wages from thirty-five cents an hour to forty cents an hour, did not constitute such a new contract by reason of the advance, between the employer and employees, so as to require a lien account for wages at the original rate to be filed within six months of the same, and because not filed, prevent recovery.

Appeal from St. Louis County Circuit Court.—*Hon. J. H. McElhinney*, Judge.

AFFIRMED.

*John H. Overall* and *Wm. G. Schofield* for appellant.

(1)   It will be observed at a glance at the petition that, although plaintiff in a way does ask for a lien, the idea conveyed and prevalent throughout the whole of plaintiff's pleading is a personal judgment against the defendant.   By section 1057, Revised Statutes 1899, it is provided that whenever any contractor . . . shall be indebted to any . . . laborer, or other person, who shall do or perform any work or labor upon . . . said road, such laborer may give notice of such indebtedness to said company and said company shall thereupon become liable to pay such laborer the amount so due, and action may be maintained against said railroad therefor; such notice shall be in writing and shall be given by such person within twenty days after the performance of the labor.   The petition filed in this cause does not recite the giving of such a notice, but does allege the service of a copy of the accounts within "ninety days after the completion of said work."   (2)

The specific objection to the lien accounts filed in this case is that they are not "just and true" accounts within the meaning of section 4241. (3) If a lien claimant intentionally fails to give credit for all sums to which the defendant is entitled to credit, then under the provisions of section 4247, as we construe it, he is not entitled to a lien for any part of his claim.

*Charles Kasper* for respondent.

(1) The final particular objection to the petition that "there is no averment that the prices charged were reasonable, or that there was anything due and unpaid at the institution of the suit," we answer, first, by referring the court to the allegation in the petition that the work was done in the employ of "Allen Paynter, under a contract," etc., and "then, under said contract with said Paynter," etc.; and, secondly, it alleges also, among other things, the filing of the liens containing "a just and true account of the amount due," etc. This is a particular province of the lien-claim, itself. Furthermore, the petition alleges all the acts and facts required by section 4241 "as necessary for securing a lien," and thus, in the respects complained of, this was fully sufficient. R. S. 1899, sec. 4246; Hydraulic Press Brick Co. v. Taggart, 76 Mo. App. 353. (2) With respect to the part of the second assignment of errors, which claims that the accounts are what are termed "lumping accounts," or too indefinite; we refer the court, first, to an account of "work of erecting of viaduct," in Iron Works v. Ry. Co., 141 Mo. 233.

GOODE, J.—This is an action to enforce a lien against the roadbed and property of the St. Louis Terminal Railway Company, for manual and team labor furnished in the construction of the road. The petition contains nine counts, the first of which is to recover for labor done by the respondent, Charles Kasper, in person, and the other eight counts for the labor

of other men who aided in making the roadbed and assigned their demands to Kasper after their lien accounts had been filed. The men, besides Kasper, whose work enters into this action are W. J. Jenkins, Edward Chivington, M. A. Blount, J. P. Davis, M. B. Walter, D. H. Coffee, John Brady and William Beebe, some of whom did only manual labor while others furnished wagons and teams. They all worked under a subcontractor by the name of Allen Poynter, who was himself a subcontractor under Michael Hanick, who had a contract with the appellant company for grading its roadbed. The service of those hands was rendered on different days from early in March to May, 1902, and that they all did the work and earned the wages embraced in the petition, was proven beyond controversy. Kasper's lien, however, was filed too late, so judgment was given in favor of the appellant on the first count of the petition but in favor of the respondent on all the other counts, the total amount of the judgment being $649.16, which sum was declared and established as a lien against certain property of the railroad company described in the judgment.

An appeal was prosecuted to this court.

One point raised by the appellant is that the petition discloses that the purpose of the action was to obtain a personal judgment in favor of the respondent against the railroad company instead of a judgment to enforce a lien against the railroad company's property for the wages Poynter, the subcontractor, had failed to pay Kasper and the other men above mentioned. The petition describes the portion of the roadbed of the railroad company on which the work was done, states that Hanick had a contract for the grading, that Poynter had a subcontract under Hanick for part of the route, and that the above-named laborers did certain specified work under Poynter. The petition also states that in ninety days after the completion of the work all the workmen filed in the office of the clerk of the cir-

cuit court of St. Louis county just and true accounts of their claims and that within said ninety days copies of said accounts were served on the railroad company. At the close of each count of the petition is a prayer for judgment against the railroad company and that a lien be enforced against its property for the amount of wages shown to be due, as provided by article 4, chapter 47, of the Revised Statutes of 1899.

A pleading like that is certainly a good one to enforce a lien for labor and material, and it is of no consequence that the prayer for relief demands a judgment against the railroad company. The allegations in each count state all that is necessary to give the respondent the benefit of the lien statutes.

Another point is that the petition fails to aver that notice of the indebtedness of the lienors was given to the railroad company within twenty days after the performance of the work, while the proof fails to show notice was given within that time. This contention is founded on a misapprehension of the statutes in regard to the enforcement of a lien against a railroad company for labor and material furnished in the construction of its road. Those statutes provide that a person claiming such a lien must file a just and true account of his demand in the office of the circuit clerk of any county through which the railroad is located, within ninety days after the completion of the work, and must serve a copy of the account on the corporation owning and operating the road within said ninety days. R. S. 1899, sec. 4241. Those provisions are both alleged and proven to have been complied with in this case. Lien accounts were filed in the office of the circuit clerk within ninety days after the work was finished by all the lienors except Kasper, who lost his claim because he filed too late. The notice required to be given within twenty days has nothing to do with the enforcement of a lien, but is the condition on which a laborer who does work on a railroad under a contractor and is not paid by the

latter, may sue the company for his wages and recover a personal judgment against it. R. S. 1899, sec. 1057. This action is not one of that kind and no personal judgment was rendered against the railroad company, but simply one declaring a lien on its property.

The lien accounts filed by the laborers are attacked because they do not contain certain credits which should have been and were allowed the railroad company in the judgment. Those credits are for the board of the workmen and the feeding of the teams which, by their contracts, were to come out of the wages Poynter agreed to pay. Six of the lien accounts, to-wit, those of Chivington, Blount, Jenkins, Walters, Coffee and Beebe contain credits for board. Those of Kasper, Davis and Brady do not; but as stated, Kasper was nonsuited as to his demand. Davis testified that he got neither board nor feed and, therefore, gave no credit for them. Brady testified that he got feed but did not know to what amount, but it was approximately $23. Thus so far as the evidence shows, the only account that was imperfect was Brady's and his did not embrace credit for board or feed because he did not know what credit to allow. We think his account was in compliance with the mechanic's lien law in respect to being just and true, although the credit was left off. Such trifling omissions are not fatal unless they occur from a fraudulent motive. Greenwood v. Harris, 8 Mo. App. 603; Uthoff v. Gerhard, 42 Mo. App. 256; Hydraulic Brick Co. v. McTaggert, 76 Mo. App. 347; Ittner v. Hughes, 133 Mo. 679.

It seems Brady got the feed on an order given by Poynter to C. F. Seymour, time-keeper for Poynter, and that he was unable to get a statement of the cost of it. The absence of the credit from the lien account was neither covinous nor harmful.

Some of the men worked for thirty-five cents an hour for a while and afterwards their wages were raised to forty cents an hour; appellant contends that

this advance in their wages constituted a new contract between them and their employer and that no recovery can be had for the wages at the first rate unless lien accounts were filed within six months after they ceased to work at that rate—that filing them within that period after all the work was done, only makes the lien good for the wages under the increased rate. Manifestly the increase of wages created no new contract in the sense contended for by the appellant and this point is frivolous.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.