SCHEELE, Respondent, v. THE LAFAYETTE BANK,
Appellant.

**St. Louis Court of Appeals, November 13, 1906.**

1. **LIFE INSURANCE: Contract for Benefit of Third Person.** The
insured in a life insurance policy agreed with a bank, in con-
sideration of certain indebtedness, to make such bank a ben-
eficiary of five-sixths interest in the policy, the agreement pro-
viding that the bank should pay or cause to be paid promptly
when due all "premiums, dues, assessments or charges of any
kind whatsoever" not only for the five-sixths, but for the whole
policy, thereupon a new policy was issued making the bank
beneficiary for five-sixths interest and the daughter of the insur-
ed the beneficiary for the remaining one-sixth. *Held*, the contract
was made for the benefit of the daughter in respect to the one-
sixth interest so that she could sue in her own name and re-
cover from the bank for damages caused to her by its failure to
keep up the payments of premiums upon the policy.

2. ———: ———: **Mortuary Call.** And where the policy in such
case provided for the time and place of payment of mortuary
premiums, the bank violated its contract by failure to pay them,
although neither the insured nor the insurance company noti-
fied it of the mortuary calls; it was bound to make periodical
inquiries of the insurance company as to the amount of the
premiums so that it might pay them as they became due.

3. ———: ———: **Premature Action.** And where the policy
in such case provided that it should not be payable until ninety
days after the death of the insured, the action by the daughter
against the bank for breach of contract was not premature be-
cause of being brought within ninety days from the death of
the insured. Her right of action accrued on her father's death
because her right in the policy would have vested at that time
if the bank had performed its contract.

4. ———: ———: **Measure of Damages.** Plaintiff was entitled to
recover in such case the one-sixth of the amount of the policy
and not merely nominal damages.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

AFFIRMED.

*Rassieur, Schnurmacher & Rassieur* for appellant.

(1) The plaintiff cannot recover under the agreement of October 22, 1897, because it was not a contract made for her benefit, even though she might have suffered loss in consequence of the non-performance of the same by the parties thereto. State v. Railroad, 125 Mo. 596; Howsmon v. Water Co., 119 Mo. 304; Ellis v. Harrison, 104 Mo. 270; Carpenter v. Realty Co., 103 Mo. App. 480; Packett Co. v. Railroad, 35 Mo. App. 272; Markel v. Telegraph Co., 19 Mo. App. 80, 85; Armstrong v. School District, 28 Mo. App. 169, 181; Bank v. Grand Lodge, 98 U. S. 123. (2) Albert G. Scheele, the insured, could not recover against the defendant, because he himself caused the loss, since he, although notified by the insurance company, failed to notify the bank of the amount of mortuary premium so to be paid under the policy. In no event can plaintiff have any greater rights under the contract than Albert G. Scheele or his legal representatives would have had. (3) The plaintiff is in no event entitled to more than nominal damages, because, at the date of the institution of this suit, even if the premiums had been paid, the money would not yet have been due from the insurance company. Where a policy provides that the insurance shall be paid within ninety days after proofs of death have been furnished, no right of action accrues thereunder until the end of the time so limited. 19 Am. and Eng. Ency., p. 103.

*Eugene H. Angert* for respondent.

(1) Appellant cannot now raise the question that plaintiff is not entitled to sue on the contract as one made for her benefit since no such theory was tendered in any manner or at any stage of the proceedings in the lower court. But even if that point were open to review, appellant's contention is without merit. Huling

v. Flag Stone Co., 87 Mo. App. 355; Street & Johnson v. Goodale, Barger & Co., 77 Mo. App. 318; Beattie Mfg. Co. v. Gerardi, 166 Mo. 142; Crone v. Stinde, 156 Mo. 262. (2) Appellant's second point is without merit since under the contract Albert G. Scheele assumed no obligation to notify the bank of assessments and the bank cannot escape liability for an admitted breach of contract by complaining of Scheele's failure to do something which he did not contract to do. Wright v. Fullerton, 60 Mo. App. 455. (3) There is no merit in the third point urged by appellant since as soon as defendant failed to pay the premium there was a breach of contract and the measure of damages was the value of plaintiff's interest in the policy. At Scheele's death this value became definitely fixed as one-sixth of the face of the policy and was not lessened by the fact that the insurance company might have waited ninety days before paying that amount. Bailey v. Gordon, 52 N. Y. App. Div. 402; Toplitz v. Bauer, 161 N. Y. 326; Clemmitt v. Ins. Co., 76 Va. 355.

STATEMENT.—The Mutual Reserve Fund Life Association was incorporated under the laws of the State of New York, and at the dates hereinafter named was authorized to do business in the State of Missouri. The association, in 1883, issued its policy insuring the life of Albert G. Scheele, of the city of St. Louis, Missouri. The policy was reissued in 1894. In October, 1897, the Henry Scheele & Sons Livery & Undertaking Company was indebted to the defendant bank in the sum of forty-eight hundred dollars, evidenced by its three several promissory notes. The Livery & Undertaking Company became insolvent and made a deed of assignment of all its property for the benefit of its creditors, giving a preference to Mary A. Scheele for the payment of fifteen hundred dollars the company owed her. A suit against the company and the indorsers on the notes it owed the bank, to set aside the deed of assignment, was threat-

ened by the defendant. To obviate the bringing of the threatened suit, on October 22, 1897, the following contract, in writing, was entered into by and between the bank and Albert G. Scheele, to-wit:

"This agreement, made and entered into this twenty-second day of October, 1897, by and between Albert G. Scheele, of Eureka, Missouri, party of the first part, and the Lafayette Bank, a corporation organized and existing under the laws of Missouri, engaged in business in the city of St. Louis, Missouri, party of the second part, witnesseth:

"Whereas, the Henry Scheele & Sons Livery and Undertaking Co., a corporation, as maker, is justly indebted to the said Lafayette Bank on three promissory notes, which are indorsed by Henry J. Scheele and Matthias H. Scheele, as co-makers, and on which notes the said Henry J. Scheele and Matthias H. Scheele are still liable, the said promissory notes being described as follows, to-wit:

"1. A note of the said company for the sum of thirteen hundred dollars, dated July 19, 1897, payable to the order of the said Lafayette Bank in three months after its date with interest from its maturity at the rate of eight per cent per annum.

"2. A note of said company for the sum of twenty-five hundred dollars, dated September 10, 1897, payable to the order of the said Lafayette Bank in three months after its date with interest from its maturity at the rate of eight per cent per annum; and

"3. A note of said company for the sum of one thousand dollars, dated September 21, 1897, payable to the order of the said Lafayette Bank in three months after its date with interest from its maturity at the rate of eight per cent per annum.

"All of the said notes being indorsed as aforesaid.

"And whereas the said Henry Scheele & Sons Livery and Undertaking Company, is insolvent, and has made

a deed of trust on all of its assets securing the payment of the said notes, provided the note for fifteen hundred dollars in said deed of trust referred to, which note was given by the said company to Mary A. Scheele, shall be first paid in full out of the proceeds of the sale provided for in said instrument;

"And whereas at the sale held under the said instrument there was realized sufficient to pay off in full the indebtedness due by the said company to Mary A. Scheele and the amount which will remain over will be insufficient even to fully satisfy the note herein firstly described, which said promissory note is now due and remains unpaid;

"And whereas the said Lafayette Bank has threatened to institute suit against the said company and the indorsers aforesaid on the said promissory note so due, and also on the other promissory notes hereinbefore described which are held by it, when they respectively become due and payable;

"Now, therefore, in consideration of the sum of five dollars to said party of the first part paid by the said Lafayette Bank, the receipt of which is hereby acknowledged and confessed, and in further consideration of the forbearance on the part of the said Lafayette Bank from instituting suit on the said promissory notes as against the maker and indorsers of the said notes up to the time when the first payment shall be made to it by the trustee in said deed of trust, it is agreed by and between the parties hereto that the said party of the first part will and hereby does assume the payment of the indebtedness due under the said notes, it being understood, however, that if the said Albert G. Scheele shall hereafter cause to be made out in the name of the Lafayette Bank a five-sixths interest in and to a certificate of membership now held by him in the Mutual Reserve Fund Life Association for the sum of five thousand dollars, dated February 5, 1894, and numbered 10226, that the same shall be given and received as full payment

of the liability hereby assumed and also in full discharge from any liability whatsoever on the said notes or either of them on the part of said Henry J. Scheele and Matthias H. Scheele or either of them, it being agreed that the latter two will also be released by an indorsement in writing to that effect made on the backs of the said notes.

"And it is hereby agreed that as a further consideration for the giving to the said Lafayette Bank of the aforesaid interest in the said certificate of membership that the said Lafayette Bank will relinquish and give up all rights acquired by it under the said deed of trust, which is recorded in book 1408 at page 451 of the recorder's office of the city of St. Louis, and also that it will pay or cause to be paid promptly when due, at its own expense, all premiums, dues, assessments or charges of any kind whatsoever which may become payable under the said entire certificate of membership from the time the same is received by it, and not only for the five-sixths part thereof which will be in its name.

"In witness whereof, the said party of the first part has hereunto set his hand and seal and the said party of the second part has caused its corporate name and seal to be hereto affixed by its president, the day and year first above written.

"ALBERT G. SCHEELE,    (Seal)

"LAFAYETTE BANK,

"By F. ARENDES, its President."

On Scheele's application and the surrender of his certificate of insurance, dated in 1894, the life association issued to him a new policy, dated February 22, 1897, in lieu of the one surrendered. This new policy, which was delivered to the defendant bank and thereafter retained by it, recited:

"That in consideration of the application and of the admission fee paid, said life association does thereby receive said Albert G. Scheele, of St. Louis, Missouri,

as a member of said association, 'upon the consideration aforesaid and upon the further consideration and upon the condition of the payment of the dues for expenses to be paid on or before the 14th day of February in every year during the continuance of this certificate or policy of insurance and also upon the further condition of the payment of all mortuary premiums payable at the home office of the association in the city of New York within thirty days from the first week day of February, April, June, August, October and December of each and every year during the continuance of this certificate or policy of insurance, and subject to all the provisions and requirements and benefits stated on the second page of this certificate or policy of insurance, which are hereby referred to and made a part of this contract, there shall be payable to the Lafayette Bank of St. Louis, Missouri (creditor), as its interests may appear, five-sixths, and to Lizzie Scheele (daughter) one-sixth, of Eureka, county of St. Louis, State of Missouri, if living at the time of the death of said member otherwise to the executor or administrators of said member the sum of $5,000 within ninety days after acceptance of satisfactory evidence to the association of the death of said member."

On the second page of the policy are the following provisions material to the issues in the case, to-wit:

"1. Within thirty days from the first week day of the months of February, April, June, August, October and December of each and every year during the continuance of this certificate or policy of insurance, there shall be payable to the association a mortuary premium for such an amount as the executive committee of the association may deem requisite, which amount shall be at such rates, according to the age of the member, as may be established by the board of directors, and the net amount received, as provided in the constitution or by-laws of said association, less twenty-five per cent to

be set apart for the reserve fund, shall go into the death fund to meet the current mortality of the association.

"5.   A notice of a mortuary premium, or other notice, addressed to a member or other person at the post office address appearing upon the books of the association shall be deemed a sufficient notice and affidavit of or proof of addressing and mailing the same, according to the usual course of business of said association, shall be taken and admitted as evidence and shall be, constitute and be deemed and held to be conclusive proof of due notice to said member and every person accepting or acquiring an interest hereunder. And in the event of the non-receipt by a member of a mortuary premium notice on or before the first week day of February, April, June, August, October and December of each and every year, it shall be nevertheless a condition precedent to the continuance of this certificate or policy of insurance in force that an amount equal at least to the amount of the next preceding mortuary premium paid shall be paid said association within thirty days from the first week day of February, April, June, August, October and December of each and every year.   Notice that a mortuary premium is payable to said association on the first week day of February, April, June, August, October and December of each and every year is hereby given and accepted and any further or other notice is expressly waived.   It is also provided that if any of the payments stipulated in the policy shall not be made on or before the day of the date, as provided in the policy at the home office of the association in the city of New York, then the policy shall be null and void."

On October 1, 1898, the life association made mortuary call No. 100, calling on Albert G. Scheele for the payment of one hundred and thirty-eight dollars and eighty-five cents, on the policy mentioned above.   Notice of this call was timely mailed to Scheele, properly addressed, and received by him, but he paid no attention to the call and failed to notify the bank that he had

received the notice, and the call was not paid. Shortly after the policy lapsed for non-payment of call No. 100, Scheele submitted to a medical examination, on blanks furnished by defendant bank, and made application for reinstatement, transmitting with the application one hundred and thirty-eight dollars and ·eighty-five cents, furnished by the bank, which was the amount of the call. On November 26, 1898, the life association notified Scheele that his application for reinstatement had been disapproved by the executive board of the association, and advised him to submit to a new medical examination; that his policy had lapsed October 31st for non-payment of the one hundred and thirty-eight dollars and eighty-five cents pursuant to call No. 100. On December 21, 1898, the life association notified Scheele by letter that his policy had become lapsed, and returned the one hundred and thirty-eight dollars and eighty-five cents theretofore remitted under call No. 100. No request for notice of mortuary calls was ever made by the bank to the life association and it received no such notice, except as indicated by the facts above stated.

Albert G. Scheele died ·on July 21, 1901. Nothing has been paid on the policy by the life association, to the bank or anyone else. Plaintiff is the daughter of Albert G. Scheele and the Lizzie Scheele named in the policy as beneficiary of one-sixth thereof. The suit is for an alleged breach of the contract of October 22, 1897, on the part of the bank in failing to pay mortuary calls, as provided in the policy, and to recover one-sixth of the face of the policy.

The issues made by the pleadings were submitted to the court, without the intervention of a jury. After all the evidence was in, defendant moved the court to declare, as a matter of law, that plaintiff could not recover. The court refused to so declare the law. No other declarations of law were asked or given, and the court, after due deliberation, found the issues for plaintiff and rendered judgment in her favor for $1,040.24.

After taking proper steps to preserve its exceptions, defendant perfected its appeal to this court.

BLAND, P. J. (after stating the facts). 1. Appellant, in its brief, assigns three grounds against the right of respondent to recover.

First. She cannot recover for the reason the contract of October 22, 1897, was not made for her benefit.

Second. Because Albert G. Scheele himself caused the policy to lapse and could not successfully prosecute a suit against the appellant for its failure to pay mortuary dues.

Third. Because at the date of the institution of the suit, less than ninety days from the date of the death of Albert G. Scheele, respondent could not have recovered anything of the life association, had the policy been in full force and effect, and hence, if entitled to recover at all, her recovery can be for no more than nominal damages.

As we understand, it is not contended by appellant, that if respondent, for a valuable consideration, was made a beneficiary in the contract of October 22, 1897, she cannot sue in her own name, but that the contract was not, in fact, entered into for her benefit, but for the benefit of Albert G. Scheele. Appellant admits, however, that if the covenant to pay future mortuary calls was for the benefit of respondent, she can sue in her own name on a breach of that covenant. Its contention is, that the covenant was only for the benefit of Albert G. Scheele, the insured, and the Life Association, the insurer. In making the contract Albert Scheele had two objects in view: First, to settle the indebtedness of the Scheele Livery & Undertaking Co., to the bank, and thereby prevent a suit by the bank to test the validity of the Scheele Livery & Undertaking Co's. deed of assignment for the benefit of its creditors, and in which Mary Scheele had been given a preference. Second, to make provision for his daughter, the respondent. The

bank had but one purpose in view, to-wit, to secure the ultimate payment of the notes the Livery & Undertaking Co. owed it. To accomplish this purpose, in consideration of being substituted as a beneficiary of five-sixths interest in the policy, it agreed that respondent should be designated in the policy as the beneficiary of the remaining one-sixth interest, and that it would "pay or cause to be paid promptly when due, at its own expense, all premiums, dues, assessments or charges of any kind whatsoever," which should become payable under the policy from the time it was delivered to it. Under the terms of the policy, the obligations to pay the mortuary calls was primarily on Albert G. Scheele. The appellant's covenant to pay the calls was, therefore, directly for his benefit. If the mortuary calls had been paid in accordance with the terms of the policy, on the death of her father, respondent would have been entitled to receive one-sixth of five thousand dollars from the life association. The payment of the calls according to the terms of the policy would, therefore, have benefited her. This interest, however, appellant contends, was only incidental and indirect and not such as to give her a right to sue on the contract.

In Howsmon v. Trenton Water Co., 119 Mo. l.c. 308, 24 S. W. 784, it is said: "The rule (permitting a third party, for whose benefit a contract is made, to sue on the contract in his own name) is not so far extended as to give a third person, who is only indirectly and incidentally benefited by the contract, a right to sue upon it." In that case it was held: "A water company which agrees with a town to be liable for damages caused by its failure to supply water sufficient to extinguish all fires cannot be sued on such agreement by a citizen though he and others pay a special tax to the company under the contract."

Other cases in which it was held, that the party suing could only receive an incidental benefit from a performance of the contract sued on and for that reason

could not sue in his own name are St. Louis & T. Packet Co. v. Mo. Pac. Railway, 35 Mo. App. 272; Carpenter v. Reliance Realty Co., 103 Mo. App. l. c. 502, 77 S. W. 1004, and cases cited; National Bank v. Grand Lodge, 98 U. S. 123.

In Markel v. Western Union Tel. Co., 19 Mo. App. l. c. 85, the court said:

"It is settled law in this State that an action lies upon a contract made by a defendant for the benefit of a plaintiff, although the plaintiff was not privy to the consideration. [Rogers et al. v. Gosnell, 58 Mo. 590, and cases cited.] But to give a plaintiff the right to sue for the breach of a contract, the contract itself must be made for his benefit. Where the benefit to the plaintiff would be incidental to carrying out the contract, but was not the cause of making the contract, the plaintiff cannot maintain an action for its breach."

In Vrooman v. Turner, 69 N. Y. l. c. 283-4, the court said: "To give a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party, and second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or an equitable claim to the benefit of the promise, or an equivalent from him personally." This case was approvingly cited in Armstrong v. School District, 28 Mo. App. l. c. 181.

Where an agreement is made to "save harmless" another against the claims of a third person, the latter cannot sue on the agreement as it was not made for his benefit. [State v. Railway, 125 Mo. 596, 28 S. W. 1074.]

The intention of Albert G. Scheele and the bank can only be ascertained by taking into view both the contract of October 22, 1897, and the reissued policy. The contention of appellant is, that the contract of October twenty-second was completed when it was executed, and as the policy was not delivered until something like two

months afterwards, the contract cannot be aided or inter-
preted by it. Among other things, the contract provided
that Albert G. Scheele should cause to be made out, in
the name of the bank, a five-sixths interest in and to the
policy. Nothing is said as to the beneficiary for the re-
maining one-sixth. After the contract was signed the
bank furnished Albert G. Scheele with a blank applica-
tion for a change in the name of the beneficiary in the
policy. The change was made on this application, desig-
nating the bank (creditor) as beneficiary of five-sixths
and Lizzie Scheele as beneficiary of one-sixth of the
amount of the insurance, and was then delivered to the
bank and retained by it without objection or protest.
Until the policy was reissued the bank was not obligated
to do anything. Its issuance, according to the terms
of the contract, was essential, therefore, to put that in-
strument into operation — to complete it as a contract
—and it was of no effect until the reissuance of the
policy. As was said by Lord MANSFIELD, in Alderson
v. Temple, 4 Burr. 2239, "A contract shall be presumed
complete upon any distinction where the justice of the
case requires it." That contracts, especially of this char-
acter, may take effect in the future is settled by the
case of Beattie Mfg. Co. v. Gerardi, 166 Mo. 142, 65 S.
W. 1035; Street & Johnson v. Goodale, Barger & Co., 77
Mo. App. 318. In none of the cases holding the party
plaintiff had no beneficial interest in the contract sued
on, was he definitely named as a party in interest, nor
was the sum he was to receive stated. Whereas, in
the contract here (as we hold that it takes both the con-
tract of October twenty-second and the policy to make
out the contract), the respondent is specially named as
a beneficiary and the sum she should receive stated, and
though her interest in the contract was contingent on
keeping the policy alive and on the death of her father,
it was not a remote or incidental interest. But it is
argued, that as respondent could not compel Albert
Scheele to pay the mortuary calls, she cannot complain

of the bank's failure to pay them, and there is no privity of contract between her and the bank. Where, upon sufficient consideration, a promise is made by one to another for the benefit of a third, the promise is deemed in law to be made to the latter though not a party to or cognizant of the contract. [Berly v. Taylor, 5 Hill 584 et seq.; Rogers v. Gosnell, 58 Mo. 1. c. 590, and cases cited.] Appellant concedes that if respondent had been contemplated as a beneficiary in the contract of October twenty-second, then her acceptance of the contract as such would furnish the privity. As we construe the contract, all this was done. In respect to the argument, that as respondent could not compel her father, Albert Schecle, to pay the mortuary calls and pervent a lapse of the policy, she has no ground to complain that the bank failed to pay the calls and thus suffered the policy to lapse, suffice it to say, that her father was under a moral obligation to make some provision for her and this obligation was a sufficient consideration to support the contract in her behalf, if a consideration was necessary. But no consideration moving from her father to respondent was necessary, and if she adopted the contract and there was a valuable consideration moving from her father to the bank, she may avail herself of its benefits. [Crone v. Stinde, 156 Mo. 1. c. 269, 55 S. W. 863, 56 S. W. 907.] We conclude that respondent had such an interest in the contract as to entitle her to sue in her own name for the breach alleged in the petition.

2. It is contended that as the notice of mortuary call No. 100 was mailed to and received by Albert Scheele, his failure to notify the bank released the latter from its obligation to pay the call. It is nowhere stipulated in the contract that Scheele should give the bank notice of the calls as made. The policy held by the bank notified it that the "mortuary premiums were payable at the home office of the association, in the city of New York, within thirty days from the first week day of February, April, June, August, October and December of

each and every year." This was sufficient notice and it was the duty of the bank to make periodical inquiries of the association as to the amount of the premiums in time to pay them as they became due. It made no inquiry and took no steps looking to a payment of these premiums, but let them go by and permitted the policy to lapse, thereby depriving respondent of her right to receive one-sixth of the face of the policy on the death of her father.

3. The policy provided that it should become payable ninety days after the death of the insured. The suit was brought September 20, 1901, in less than ninety days from the death of the insured, and the contention is that the suit was prematurely brought. As soon as Albert Scheele died, the right of respondent in the policy would have vested, had appellant performed its contract by paying the mortuary premiums. Respondent's right of action, therefore accrued on the date of her father's death.

It is finally contended that the damages are excessive, that respondent's recovery should be restricted to nominal damages only. It is the general rule for the measure of damages arising out of a breach of contract, that the injured party is entitled to recover such losses as were reasonably within the contemplation of the parties at the time they entered into the contract, and that he shall be put in as good condition as if the contract had been performed. [Shouse v. Neiswaanger, 18 Mo. App. l. c. 244.] Had the bank performed its contract, on the death of her father, respondent would have received one-sixth of five thousand dollars or $833.33 1-3. This amount plus interest, the learned trial judge awarded her.

In Bailey v. Am. Deposit & Loan Co., 52 N. Y. App. Div. 402, a suit by the beneficiary in a life insurance policy against the defendant, to whom the policy had been pledged to sucure a debt and who had wrongfully

120 App.—40

surrendered the same, it was ruled the measure of damages was the difference between the amount of the loan and the amount which would have been received from the insurance company, if the defendant had not wrongfully surrendered the policy.

In Toplitz v. Baur, 161 N. Y. 325, a policy of insurance, in which the insured's daughters were beneficiaries, was pledged as security for the payment of a note. Defendant permitted the policy to be cancelled by the insurance company, in violation of his contract. On the measure of damages, the court said the beneficiaries were entitled to complete indemnity for the loss sustained, which was the face value (the insured having died) less what it would have cost to carry the policy to the date of the death of the insured.

No offset was pleaded and there is no evidence or stipulation in the record as to the amount of premiums that would have become due up to the time of the death of Albert Scheele, and hence they cannot be taken into consideration to diminish the damages. We think the finding of the learned trial judge is eminently just, and affirm the judgment. All concur.