175 So.2d 245 (1965)
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a corporation, Appellant,
v.
PINELLAS CENTRAL BANK & TRUST COMPANY, a corporation, Appellee.
No. 5122.
District Court of Appeal of Florida. Second District.
May 21, 1965.
*246 Charles W. Pittman, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Stephen D. Hughes, of Thompson & Hughes, Largo, for appellee.
SEBRING, H.L., Associate Judge.
This appeal is from a summary final judgment in favor of the plaintiff upon the following undisputed facts.
Massachusetts Mutual Life Insurance Company issued a policy of life insurance to one Carl F. Falzoni, effective as of February 22, 1960, premiums thereon to be payable monthly in advance. After the policy was issued, Falzoni assigned and delivered it to Pinellas Central Bank and Trust Company as collateral security for a loan.
Two days after the loan was made, Massachusetts Mutual received from the bank a copy of the assignment of the policy and a letter of transmittal informing the insurer that the policy had been assigned as collateral security for a loan, and inquiring as to the cash surrender value of the policy, the amount of accumulated dividends, the amount of any outstanding loans against the policy, and the method of payment of the policy in the event of the death of the insured. On the same day the insurer received from Falzoni a written request for a change of premium payments from monthly to quarterly payments and also a written request for a change of premium *247 payments from quarterly to annual periods. Accompanying the requests was a quarterly premium payment which extended the policy coverage up to February 22, 1961 and an annual premium payment which extended the policy coverage from February 22, 1961 to February 22, 1962. These requests for changes in premium payment frequencies were made by Falzoni at the express direction of the bank, and the bank furnished the money with which to pay the premiums up to February 22, 1962.
The next annual premium on the policy became due and payable on February 22, 1962. When payment was not made on or before the due date, the insurer advised Falzoni that the premium was past due, and when this brought no payment from Falzoni during the 31-day grace period allowed by the policy, the insurer availed itself of the policy provisions providing for the automatic application of accumulated dividends and cash surrender value to past due premiums, and applied first the accumulated dividends, and then a portion of the cash surrender value, to the payment of the past due premium.
On November 2, 1962, the bank surrendered the policy of insurance to the insurer with the request that the cash surrender value be paid to it. In pursuance of this request, the insurer mailed the bank a check in the amount of $398.78, which represented the difference between the gross cash surrender value of the policy and the amount that had been applied from the cash surrender value to the payment of the past due premium. The bank refused to accept the check as full payment of the cash surrender value, contending that the insurer had no right to avail itself of the automatic premium loan provision of the policy after it had been notified by the bank of the assignment of the cash surrender value of the policy and when it knew that the gross cash surrender value was not sufficient to pay Falzoni's indebtedness to the bank. The insurer refused to pay the additional sum, and the bank thereupon instituted this action for the recovery of this amount. Upon hearing upon pleadings and affidavits the trial court granted a motion for summary final judgment in favor of the plaintiff for the amount claimed, with interest and attorneys' fees, and this present appeal was taken from the judgment.
We know of no theory upon which the plaintiff could have lawfully recovered the gross cash surrender value of the policy, under the undisputed facts of the case.
When Falzoni made the assignment of the policy to the bank, it acquired the policy "subject to all the terms and conditions of the policy and to all superior liens, if any, which the insurer may have against the policy." As the result of this assignment the assignee was placed in the same status with respect to rights and liabilities under the policy that the insured occupied before the transfer. Moon v. Williams, 102 Fla. 214, 135 So. 555. After the assignment the bank held the policy as collateral for a loan  the exact amount of which is not shown by the record and which, so far as we can find, was never disclosed to the insurer  subject to all the conditions of the policy so far as they imposed duties and obligations upon Falzoni. Among these duties and obligations were that premiums were to be payable in advance before their due date; that a default in premium payment would occur upon non-payment of any premium on its due date; and that if any premium in default was not paid before the end of a grace period, fixed in the policy at 31 days after the due date of the defaulted premium, the policy would lapse and terminate as of the due date of the premium in default.
The bank also acquired the policy subject to a condition inserted therein at the requestion of Falzoni, that in the event any premium remained unpaid on the last day of the grace period, dividend accumulations on the policy would be automatically applied by the insurer to pay the premium in full, if the dividend accumulations were sufficient for this purpose, and, if they were not, and the insured had elected to come *248 under an "Automatic Premium Loans" provision available only in policies on which premiums were payable annually, semi-annually or quarterly, that the insurer would automatically lend to the insured, at 5% per annum, an amount sufficient to pay the balance of the unpaid premium, provided the security under the policy for the repayment of the loan was then sufficient.
It is averred in the answer of the defendant, and stands undenied, that the bank knew that it was customary to include automatic premium loan provisions in life insurance policies. But, however that may be, it is clear that the bank had the policy in its hands on or before December 14, 1960, the day the policy was assigned, and hence had full opportunity to examine its provisions, including the provisions as to the due date and as to premium payments and the consequences that would ensue in the event the premiums were not paid in accordance with the terms of the policy. That the bank knew of the automatic premium loan provision in the policy seems evident, we think, by the fact that the moment the bank accepted the policy as security for a loan, it directed Falzoni to request a change in the premium payment plan so as to bring the policy within the Automatic Premium Loans provision, and advanced money to him with which to pay a quarterly plus an annual premium on the policy.
After Falzoni thus made himself eligible to participate in the Automatic Premium Loans provision, we think it became the duty of the insurer to apply accumulated dividends and cash surrender values to the payment of past due premiums if the insured failed to pay them, and might well have rendered itself liable to the insured or his beneficiary if it had allowed the policy to lapse. 15 Appleman, Insurance Law & Practice, § 8277, p. 62; Northwestern Mutual Life Ins. Co. v. United States National Bank of Omaha, 8 Cir., 267 F.2d 565.
While it may be that the insurer never gave the bank notice that a premium payment was due on the policy, we think that this makes no difference, because there was nothing in the policy or in any arrangement between the parties requiring notice to be given. Under these circumstances, the insurer was under no duty to inform the assignee of the time when payment of premiums was required; if the bank desired this information it had the duty to make periodic inquiries of the insurer as to the dates premiums were due and the amounts thereof. Franklin Life Ins. Co. v. American Nat. Bank, 74 Ark. 1, 84 S.W. 789; Scheele v. Lafayette Bank, 120 Mo. App. 611, 97 S.W. 621; Goldheim v. Connecticut Mutual Life Ins. Co., 107 U.S.App.D.C. 94, 274 F.2d 752.
It follows from our view of the case that the trial court committed reversible error when it entered the summary final judgment in favor of the plaintiff. Accordingly, the judgment should be reversed and remanded with directions that an appropriate judgment be entered in accordance with law.
It is so ordered.
ALLEN, Acting C.J., and SHANNON, J., concur.