SERVICE PURCHASING COMPANY, A CORPORATION, RESPONDENT v. EDWARD BRENNAN, APPELLANT.—42 S. W. (2d) 39.

St. Louis Court of Appeals. Opinion filed September 15, 1931.

*August Walz* for appellant.

*Roy H. Bergmann, Jos. J. Tomasso* and *Clark G. Hardeman* for respondent.

*F. E. Williams, Amicus Curiae.*

BENNICK, C.—This is an action for conversion. Originating in a justice's court, the case was taken on appeal to the circuit court, wherein, upon a trial to the court alone, a jury being waived, a judgment was rendered in favor of plaintiff, and against defendant, in the sum of $22. A motion for a new trial was filed and overruled, following which defendant prayed for and was granted an appeal to the Supreme Court, evidently upon the theory that there was a live constitutional question in the case. That court found that such was not the situation, however, and consequently ordered the case to be transferred here. [Service Purchasing Company v. Brennan (Mo. Sup.), 32 S. W. (2d) 81.]

No point is made in the briefs in regard to the form or sufficiency of the pleadings, and as a result their contents need not be considered.

Of the parties to the cause, it is enough to say that plaintiff, Service Purchasing Company, is a corporation, engaged (so its testimony shows), in the business of buying earned salary or wage accounts; while defendant, Edward Brennan, is or was in the employ of the Missouri Pacific Railway Company as a yard clerk.

Certain facts are undisputed in the record, among which are that defendant was paid a wage of $4.40 a day, and that the railroad company paid its employees semi-monthly, the amount earned from the first to the fifteenth of the month, inclusive, being due and payable on the twenty-fifth, and the amount earned from the sixteenth to the end of the month, inclusive, being due and payable on the tenth of the following month. In other words, the railroad company reserved a period of ten days after the maturity of each wage account in which to make up its pay roll for that period.

On April 25, 1927, defendant came to the office of plaintiff company, and advised the one in charge that he wanted to get some money. Whether it was his purpose to sell his wage account, or to obtain a loan, was a matter of dispute at the trial, plaintiff contending the former, and defendant the latter, at least in so far as he was permitted to do so under the rulings of the court. At any rate, defendant was asked to, and did, fill out a prepared form, styled an "application to sell an earned salary or wage account," in which he made certain representations in regard to his employment and outstanding indebtedness.

It appears from plaintiff's case that defendant had worked five days after April 15, and up to April 25, 1927, the date of the purported assignment, for which his earnings would have been the sum of $22, computed at the rate of $4.40 a day. Plaintiff offered him the sum of $20 for such account (under its version of the transaction), which defendant accepted, whereupon the following document, introduced in evidence as Plaintiff's Exhibit B, was executed:

"For and in consideration of the sum of $20.00 Dollars, cash in hand this day paid me, the receipt of which is hereby acknowledged, I do hereby sell, transfer and assign to the Service Purchasing Co., doing business in the City of St. Louis, Mo., my account for salary or wages already earned by me during the month of April, 1927, and amounting to $22.00, and due to me by Missouri Pacific R. R. Co.

"This is an absolute and unconditional sale, transfer and assignment of the said account without further right, title or interest remaining in me, and in selling the said account to the said Service Purchasing Co. for the cash consideration herein shown and mutually agreed upon, I represent and warrant that I was employed by the said above-named company during the month and year above stated, in the capacity of Yard Clerk, 2221 Gratiot St., and while so employed I earned, and there is due to me, the salary or wages above stated.

"I further represent and warrant that there are no off-sets, claims, demands, orders, drafts, garnishments or attachments outstanding in any way affecting the said account; that I have not heretofore sold, transferred or assigned the same, but that the said account is just, true and unpaid, and that I have full power and authority to sell, transfer and assign the same.

"The said Service Purchasing Co. is hereby authorized and empowered, and by these presents I do hereby authorize and empower the said Service Purchasing Co., or C. G. Hardeman, its agent, as my attorney in fact, for me and in my name, to sign any and all checks, vouchers, receipts or acquittances necessary and proper to be signed in order to collect and evidence the payment of the said account to the same extent and authority, if I were personally present, I hereby ratifying and confirming all that my said attorney in fact may lawfully do by virtue hereof.

"Name, EDWARD BRENNAN.

"Address, 924 La Salle St.

"In Witness Whereof I have hereunto set my hand at St. Louis, Mo., this April 25, 1927.

"Witness:

"C. G. HARDEMAN."

Plaintiff's testimony was that it was aware of the existence of a rule of the railroad company making it a dischargeable offense for an employee to make an assignment, and that consequently, it did not notify the railroad company of what had occurred, but that instead, defendant was made plaintiff's agent for the purpose of making the collection for it. On the next pay day, which was May 10, 1927, defendant collected the sum of $45, shown by the pay roll to be due him for services from April 16th to the end of the month, and of which the purported assignment of $22 was a part. It was admitted that such sum of $22, or no part thereof, was turned over to plaintiff by defendant, and in due course this present action for its recovery was instituted.

It was further disclosed by the evidence that on May 9, 1927, defendant filed a voluntary petition in bankruptcy; that among his assets, he listed the wages then due him from the railroad company; that plaintiff filed proof of its claim for $22 in the bankruptcy court on May 14, 1927; and that the claim was disallowed by the referee without prejudice, and without affecting plaintiff's right to maintain and recover in this action.

The prime insistence urged on behalf of defendant is that the court erred in rendering judgment against him, and in favor of plaintiff, the theory being, in substance, that under no view of the case was plaintiff shown to have acquired such a title to the fund covered by the purported assignment as to have supported an action for its conversion. More specifically stated, defendant argues that for plaintiff to have successfully maintained this action, it was necessary for it to have shown that it had the right of property in, or the right of possession to, the fund charged to have been converted by defendant; and that no such right was disclosed, in that the assignment was but a partial one, concededly made without the consent of the debtor, so as not to have effectuated a transfer of absolute ownership to plaintiff as assignee.

This contention proceeds upon the theory that on April 25, 1927, when the instrument of assignment was executed, defendant's two-weeks' wage account, covering the period from April 16th to April 30th, inclusive, had not yet matured, so as to be due and payable from the railroad company under the terms of the contract of employment; and that consequently, neither the whole, nor any portion, of such wage account was assignable by defendant without his employer's consent, until after the close of working hours on the last day of the wage period, when it might first be said that the increasing, variable account had become a stated sum due and to be paid to defendant on the following pay day.

There is no controversy about the rule relied upon by defendant, that a portion of a debt or claim is incapable of assignment so as

to be binding upon the debtor without his consent, the reason for the rule being that a debtor has the right to pay his indebtedness as an entirety, and not to be made subject against his will to actions by several claimants, each for a part only of the whole demand. We have finally concluded, however, that the admitted facts of this case bring it without the inhibition of that rule.

Concededly defendant assigned to plaintiff the whole of the amount owing to him from his employer at the time the assignment was made. In other words, the fact that he had theretofore performed his services for five days at a wage scale of $4.40 a day entitled him ultimately to receive the sum of $22 from the railroad company for his labor over that period; and that was the identical sum that he assigned. Thus there was no partial assignment of the debt, provided it may be said that his employer was indebted to him at the time the assignment was made, conditioned upon the premise that the performance of services over a given number of units of time at a given wage scale creates such an obligation on the employer's part to pay therefor as to be an immediate asset to the employee, notwithstanding the fact that under the terms of the contract of employment the particular sum may not be due and payable from the employer until a later date.

Now the record shows no more about defendant's contract of employment than that he was engaged at a wage scale of $4.40 a day, and that he was paid semi-monthly, all of which has been heretofore indicated. Presumably, the fact of semi-monthly payments was a compliance on the part of the railroad company with the provision of Section 4608, Revised Statutes 1929, which requires all corporations doing business in this State, which shall employ any mechanics, laborers, or other servants, to pay the wages of such employees as often as semi-monthly. But after all, it was the day, and not the semi-monthly period, which constituted the unit of time by which the total amount of wages due the employee was to be computed. In other words, defendant's wages accumulated by the day, though under the implied terms of his contract of employment his wage account was paid only semi-monthly; and thus the contract was a severable one, in that when payment was made, defendant received pay at the agreed wage scale for the number of days he had worked, instead of being held to the performance of labor over a full semi-monthly period as a condition precedent to the recovery of any wages therefor.

Notwithstanding all arguments advanced to the contrary, we think the conclusion is inescapable that the acquisition of a property right in and to wages is to be regarded as one thing, and the time fixed by the contract of employment for their payment as another. In the case of defendant's employment with the railroad company, his

contract called for the performance of a day's work, whereupon he became possessed of a present, tangible, property right in and to the sum of $4.40, even though the same was not to be paid until a subsequent date. Having been employed under a severable contract, if he had abandoned the company's service, he could have recovered for the services actually performed, though short of a semi-monthly period; if he had been discharged, he could have compelled his employer to pay him his wages then earned at the contract rate, with a penalty provided by statute against the employer in the event of its refusal; and if he had died, his administrator could have collected the amount of wages which represented compensation at the agreed wage scale for the total number of days actually worked, the same to be listed as assets of the estate. Consequently, we conclude that when defendant assigned the whole of the amount owing to him at the time of the assignment, though it is true that the semi-monthly wage account had not yet matured, he was possessed of a vested estate or interest in property capable of assignment; that there was no violation of the rule against partial assignments, without any regard to the question of whether such defense would be available in an action purely between assignee and assignor; and that, so far as general rules of law are concerned, there was a transfer to plaintiff of absolute ownership of the sum assigned, which it could have enforced directly against the debtor upon due notice to it.

Nor was the assignment bad under Section 2969, Revised Statutes 1929, the statute relating to the assignment of wages, which provides that all assignments of wages, salaries, or earnings must be in writing, with the correct date of the assignment, the amount assigned, and the name or names of the party or parties owing the wages, salaries, and earnings so assigned; and further, that all assignments of wages, salaries, and earnings, not earned at the time the assignment is made, shall be null and void.

So far as the form of the assignment in question is concerned, there is no dispute but that it met the tests laid down in the first portion of the statute; but it has been suggested that it was nevertheless null and void, in that the wages assigned had not been "earned" at the time the instrument of assignment was executed.

This argument is really but a reiteration of that which has been heretofore considered, and proceeds upon the theory that the word "earned," as it appears in the statute, was used by the lawmakers as synonymous with "due and payable," and that under the terms of a contract of hiring, such as is involved in the instant case, wages are not earned by the employee, even though services have been rendered by him over a given number of units of time at an agreed wage scale, until the maturity of the wage account for which the pay check is to be drawn.

We think this view of the statute is untenable for several reasons. In the first place, it was not the purpose of the Legislature, in the enactment of the statute, to provide against the splitting of a wage account, but rather it was its intent, in the exercise of the police power, to protect the wage-earning class, in so far as it might, against unscrupulous money lenders, and the effects of its own improvidence. [Heller v. Lutz, 254 Mo. 704, 164 S. W. 123.] At common law, and prior to the enactment of the statute, it had been the rule that not only might earned wages be assigned, but also that an assignment of future or prospective wages, to be earned under an existing contract of employment, created a legal right in the assignee, even though the contract (according to some cases), might be indefinite as to time and amount, and whether or not the assignment was intended as a present sale, or as a mere security for present or future advancements. It was undoubtedly this situation which the Legislature set about to correct, by distinguishing between past and future earnings, and by providing that the former might be assigned, and the latter not.

So far as concerns the judicial construction of the word "earned," when used with reference to the accumulation of wages, it has been expressly differentiated from "due," and the term has been held to refer to and describe the wages for which the workman has done the work, whether the same were then due or not. [The Talus (C. C. A.), 248 Fed. 670; Low Ling Sing v. Standard Transportation Co. (D. C.), 274 Fed. 1017; In re B. H. Gladding Co. (D. C.), 120 Fed. 709.] The Supreme Court in Heller v. Lutz, supra, spoke of earned wages as constituting a present, tangible, property right or interest, to be distinguished from the incorporeal, intangible, and invisible right incident to wages to be earned by labor subsequently to be performed. Furthermore the Legislature, in the enactment of Section 4610, Revised Statutes 1929, providing that upon the discharge of an employe, his unpaid wages then earned at the contract rate, shall become due and payable, has made the same distinction; and this court, in Quinn v. T. M. Sayman Products Co. (Mo. App.), 296 S. W. 198, has so interpreted it.

Consequently we conclude that wages are earned whenever services have been rendered by the employe over a stated unit of time at an agreed wage scale, whether they are then due and payable or not; and that the Legislature, in the enactment of the assignment statute, used the term in that sense. It follows, therefore, that the assignment in question conveyed such a title to plaintiff under its theory of the transaction as to support the present action, and to have warranted the court in entering judgment for it (if the trial was otherwise free from error); nor was defendant's discharge in bankruptcy (if he was discharged), a defense, in view of his retention of the money

collected by him from his employer, if it be found that the assignment constituted a bona-fide sale, which was negotiated in good faith, and for a valuable consideration. [Covington v. Rosenbusch, 148 Ga. 459, 97 S. E. 78; Spurlock v. Garner, 38 Ga. App. 614, 144 S. E. 819.]

But even though it be true that plaintiff adduced proof of a character which warranted the submission of its case to the consideration of the court as the trier of the facts, nevertheless we think that error was committed of a substantial nature, and in regard to a matter highly material to the rights of the defendant, which requires the trial of the case anew. Such error, as we view it, occurred in connection with the exclusion of evidence which was offered at the instance of defendant.

Inasmuch as the case originated in a justice's court, and defendant elected to file no answer either there or when the case reached the circuit court on appeal, his appearance to the merits operated to raise the general issue, the effect of which was to deny the cause of action set forth in plaintiff's petition, and to put in issue every fact necessary to sustain the same.

Now it is evident from the record as a whole that a defense strongly relied upon by defendant was that the transaction was a loan, rather than an outright sale of earned wages; that the purported assignment was in reality given to secure the loan; that the loan bore a usurious rate of interest; and that the pledge given to secure the same was therefore invalid and illegal. During the taking of plaintiff's evidence, testimony had been adduced to the effect that the transaction was an absolute sale. When defendant was put upon the stand, he was reminded of plaintiff's evidence, and was asked about the truth of it, but upon plaintiff's objection, he was not permitted to give his version of the transaction, upon the ground that the paper of assignment spoke for itself.

We think this testimony was entirely proper, as tending to show that plaintiff had acquired no such title by reason of the instrument of assignment in question as to support its action for conversion. The evidence was offered by defendant, not for the purpose of varying the terms of the written instrument, but for the purpose of explaining and showing the true nature and character of the transaction; and it is a general rule that parol evidence which is adduced to show the real nature of the transaction, or the purpose of the writing, does not infringe upon the rule which disallows the verbal contradiction of a written instrument. [22 C. J. 1259; 10 R. C. L., p. 1039, sec. 231.] Thus, in actions similar to this, involving personal property, it has frequently been held that it is permissible to show that a bill of sale, or other writing evidencing upon its face an absolute transfer of property, was intended between the parties themselves merely as a mortgage, or consisted merely in the giving of security. [Johson v. Huston, 17 Mo. 58; Wood v. Matthews, 73 Mo. 477; Ittner v. Hughes,

154 Mo. 55, 65, 55 S. W. 267; Poplin v. Brown, 200 Mo. App. 255, 205 S. W. 411; Newell v. Keeler, 13 Mo. App. 189; King v. Greaves & Ruff, 51 Mo. App. 534; 22 C. J. 1260.]

Defendant had testified that when he went to plaintiff's office, he told the one in charge that he wanted to borrow $20; plaintiff's secretary, who was put upon the stand in rebuttal, did not dispute that statement; and if it be found that defendant, in the inception of the transaction, did desire to negotiate a loan, the courts will be inclined to say that his attempted defense was well-founded. [Cobb v. Day, 106 Mo. 278, 17 S. W. 323.] But the trouble is that the court, in this instance, by its ruling foreclosed to itself, as the trier of the facts, the right to consider that defense, which was a perfectly valid one, in that if the transaction was a loan, no matter how disguised, it was tainted with usury, and the pledge given to secure the same was thereby destroyed absolutely. [Section 2844, R. S. 1929; Bell v. Mulholland, 90 Mo. App. 612; Tolman v. Union Casualty & Surety Co., 90 Mo. App. 274; Henderson v. Tolman, 130 Mo. App. 498, 109 S. W. 76.]

Accordingly, it follows that for the error noted, the judgment rendered by the circuit court should be reversed, and the cause remanded; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed, and the case remanded. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.