ALBRENT, Administratrix, Appellant, vs. SPENCER and others, Respondents.*

*January 8—March 5, 1957.*

---

* Motion for rehearing denied, with $25 costs, on May 7, 1957.

For the appellant there were briefs by *Henry P. Hughes* of Oshkosh, attorney, and *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau of counsel, and oral argument by *Mr. Hughes* and *Mr. Herbert Terwilliger*.

For the respondents there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Frederick N. Trowbridge*.

STEINLE, J. The plaintiff contends here, as she did below, that parol evidence is admissible to establish the true intent of the parties, viz., that the assignment covered only the cash surrender value; further, that there is an ambiguity in the written instrument relating to the option of Albrent to repurchase in event the sale of the stock to Clintonville Transfer Lines was not consummated,—the contract being silent as to Albrent's right to reacquire the insurance, and there being no provision as to disposition of the proceeds in the event of Albrent's death after the transfer of the insurance, but before the cashing in of the policies. Parol evidence, it is submitted, would be admissible with regard to such ambiguities.

It is also the position of the plaintiff that since the only legitimate interest which Spencer had in the insurance policies on Albrent's life was the cash surrender value, and that

since none of the other defendants had an insurable interest in the life of Albrent, the agreement between the defendants to keep alive the policies on Albrent's life was a conspiracy to illegally speculate on a profit out of the excess, and that the same constituted a gambling contract, which is forbidden as a matter of public policy in this state. Plaintiff submits that parol evidence would be admissible to show such conspiracy. The plaintiff also contends that the doctrine of unjust enrichment applies to the situation as alleged in the complaint.

The defendants maintain that since the written contract between Albrent and Spencer was made a part of the complaint, its terms cannot be varied, and that the demurrer does not admit the construction of the contract as placed on it by the plaintiff; further, that since there is no claim of fraud or mutual mistake, parol evidence may not be introduced as to any contemporary oral agreement, the contract being unambiguous; further, that the contract was not illegal as against public policy; and also, that no wrongful conspiracy to the damage of the plaintiff was alleged, and that there was no unjust enrichment.

In its memorandum decision the trial court declared that while a demurrer ordinarily admits all the facts pleaded, it does not admit of the construction of an instrument when the instrument itself is pleaded, and that the very object of the demurrer in such case is to submit the question as a matter of law for the determination of the court. The court found that there was neither a patent nor a latent ambiguity existing with reference to the provision in paragraph Six of the written instrument pertaining to the absolute assignment of the insurance to Spencer, and paragraph Eight of that instrument relating to Albrent's option which makes no mention of reassignment of the insurance to him, and which does not provide for disposition of the proceeds of the principal amounts of the insurance in the event of Albrent's death

after transfer and before the cashing in of the policies. The court tested the matter under the rule laid down in *Klueter v. Joseph Schlitz Brewing Co.* (1910), 143 Wis. 347, 353, 128 N. W. 43, that "The words of a contract, in themselves, may be plain, yet when applied to the situation with which it deals, not plain, the literal sense leading to such unreasonableness as to suggest that the parties probably did not so intend." The court was of the opinion that the language in the paragraphs of the written instrument referred to, was plain, and that it did not lead to a result which was so unreasonable as to suggest that the parties probably did not so intend. The court was also of the view that the omission of any provision as to reassignment or disposition of the proceeds of the insurance in the event of Albrent's death while the policies were still in force, was consistent with an absolute and inconsistent with a conditional or qualified transfer, and that hence parol evidence was not admissible with respect to the same.

The court was also of the opinion that the agreement in question was neither illegal nor against public policy. Such view was predicated principally on considerations that in this state it has heretofore been held that an assignment of a life insurance policy to one not having an insurable interest, is not of itself invalid, but that if made for cloaking an agreement whereby the assignee is to engage in a gamble upon the life of the insured, it is invalid. *Strike v. Wisconsin Odd Fellows Mut. Life Ins. Co.* (1897), 95 Wis. 583, 70 N. W. 819, and *Opitz v. Karel* (1903), 118 Wis. 527, 95 N. W. 948; that no facts are alleged from which the court may properly conclude that the contract was made for the purpose of allowing Spencer to gamble on Albrent's life; that there is nothing upon the face of the complaint from which the court could properly conclude that after March 29, 1954, Spencer any longer had an insurable interest in Albrent's life; that if intent on the part of Spencer and the other de-

fendants to gamble on Albrent's life after March 29, 1954, could successfully be established, such consideration would be of no avail to Albrent's estate for the reason that neither when the policy was issued, nor when it was assigned to Spencer, had it been tainted with a gambling interest. The court noted that Spencer may not legally be condemned for the reason that he made an exorbitant profit; that everyone has an unquestioned right to enter into an improvident contract, or to profit by his being more financially astute than his fellowman, so long as fraud, illegality, or the like are not factors in his success. The court pointed out that neither fraud, duress, nor mutual mistake are claimed.

The contentions of the plaintiff challenge largely the conclusions of the trial court that parol evidence would not be admissible in an attempt to establish that Spencer and Albrent did not intend that any interest in the policies over and above the cash surrender value was to be transferred under the contract, and that parol evidence would not be receivable to show that Albrent did not consent to or authorize any use of the policies except as related to the cash surrender value. Notwithstanding that it were to be held that the trial court's conclusions as to these and the other of the plaintiff's contentions are correct, we are of the opinion that the demurrer must be overruled.

We consider that the case presents the issue of whether it is against public policy for a creditor of the insured to avail himself of an absolute assignment of a previously pledged life insurance policy issued upon the life of the debtor, which assignment is intended to end the creditor-debtor relationship, for any other purpose than enabling the creditor to realize the cash surrender value of the policy.

It is a well-established principle that there must be an insurable interest present at the inception of a policy of life insurance. 29 Am. Jur., Insurance, p. 309, sec. 353. In considering the nature of an insurable interest, and the under-

lying reason why the absence of such an interest renders the policy void, the United States supreme court speaking through Mr. Justice FIELD declared in *Warnock v. Davis* (1881), 104 U. S. 775, 779, 26 L. Ed. 924:

"But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

It offends one's sense of justice that a creditor should realize more out of the proceeds of the policy than the principal and interest due on the loan for which the policy was pledged plus any expenditure of the creditor for premiums necessary to protect his security. To uphold the result reached below in the instant case would be to encourage creditors to bring pressure upon necessitous debtors to convert the rights of the creditor from that of pledgee to that of owner in order that he might gamble upon the life of the insured in the hope of realizing the difference between the amount due on the loan and the face of the policy. In the instant case it is alleged that such difference amounted to the huge sum of approximately $90,000.

While it must be conceded that the majority rule is that, where an owner of a life insurance policy has an insurable interest therein he may make a valid assignment of the policy to a third party having no such insurable interest (29 Am. Jur., Insurance, p. 313, sec. 357), it clearly is in the interest of public policy to engraft an exception onto such rule to cover situations such as that which confronts us here. A desirable exception and one that we are compelled to adopt

is that any purported absolute assignment by a debtor to a creditor of a policy, which had previously been pledged as security to the creditor is only valid between the immediate parties to the extent of enabling the creditor to realize the cash surrender value of the policy. If the creditor after receiving such absolute assignment and the creditor-debtor relationship is terminated, continues to hold the policy for the purpose of gambling upon the life of the insured, he becomes a constructive trustee for the benefit of the estate of the deceased of any proceeds received upon the death of the insured, to the extent that such proceeds exceed the amount that would have been due such assignee if the creditor-debtor relationship had not been extinguished.

A precedent for enforcing such a constructive trust is provided by the decision of the United States supreme court in *Warnock v. Davis, supra.* In that case the insured assigned a policy upon his life to a trust association, which had no insurable interest, in consideration for the association agreeing to pay the premiums due on the policy, it being agreed that upon his death the association was to retain nine tenths of the proceeds received on the policy. The insured died and the insurance company paid the amount of the face of the policy to the association and it accounted for one tenth thereof to the widow of the insured. The court held that it was against public policy to assign a life insurance policy to one not having an insurable interest in the insured. Therefore, the agreement between the insured and the association whereby the latter was to retain nine tenths of the proceeds was void. The court then went on to state (104 U. S. at p. 781) :

"It [the agreement] is one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security; and the courts will, therefore, hold the recipient of the moneys beyond those

sums to account to the representatives of the deceased. It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due. It was, also, lawful for the assured to assign the policy as security for their payment. The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest. To hold it valid for the whole proceeds would be to sanction speculative risks on human life, and encourage the evils for which wager policies are condemned."

Likewise, in *Wagner v. National Engraving Co.* (1940), 307 Ill. App. 509, 512, 30 N. E. (2d) 750, the court declared:

". . . we also assume the correctness of plaintiff's legal theory, namely, that when insurance is payable to a beneficiary who has no insurable interest and the insurer pays the same without raising this defense, the beneficiary will hold the amount so paid as trustee for the estate of the insured. While the precise question has not been decided in this state, so far as we are aware, the courts of many states of other jurisdictions have so decided. [Citing *Warnock v. Davis, supra,* and other cases.]"

For other cases imposing a constructive trust upon a creditor in favor of the estate of the deceased insured as to proceeds collected by the creditor upon the policy in excess of the principal and interest of the loan, and other advances made by the creditor, see Anno. 115 A. L. R. 741, 745.

Under the principle herein declared that an absolute assignment by a debtor to a creditor of a life insurance policy which had previously been pledged as security to a creditor is only valid between the immediate parties to the extent of enabling the creditor to realize the cash surrender value of the policy, it is manifest that a cause of action is asserted in the complaint. It is the rule that if a complaint states any facts on which the plaintiff can recover, it must be held to state a cause of action and will not be subject to demurrer.

*Nelson v. La Crosse Trailer Corp.* (1949), 254 Wis. 414, 37 N. W. (2d) 63; *Local 1111 v. Allen-Bradley Co.* (1949), 255 Wis. 613, 39 N. W. (2d) 740. If the facts relating to the assignment of the policies as to such cause of action, are established at the trial, the court will be obliged to hold as a matter of law that Spencer and the other defendants who are his assignees are constructive trustees for the benefit of Albrent's estate of that portion of the life insurance proceeds which exceeds the amount which would have been owing on Albrent's indebtedness to Spencer if the absolute assignment of the policies had not been taken. If any premiums had been paid by the defendants to continue the policies in force, such advances would also be deductible in determining the amount subject to the constructive trust.

Since a valid cause of action under the principle just above stated is asserted in the complaint, the order which is the subject of the appeal, cannot stand. The order is to be reversed.

*By the Court.*—Order reversed.

BROWN, J., dissents.