SORENSON and wife, Appellants, v. NATIONAL LIFE INSURANCE COMPANY, Respondent.

*No. 211. Argued October 3, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 510.)

For the appellants there was a brief by *Godfrey, Neshek & Worth* and *Richard A. Howarth, Jr.,* all of Elkhorn, and oral argument by *Mr. Howarth.*

For the respondent there was a brief by *Boardman, Suhr, Curry & Field,* and oral argument by *Kenneth T. McCormick, Jr.,* all of Madison.

HANLEY, J.  The sole issue on this appeal is whether the assignee of a life insurance policy is entitled to receive notice of premiums due or lapse notices, where such notice is not specifically required by statute or under the terms of the policy or assignment.

In determining the sufficiency of a complaint to successfully withstand a demurrer, all allegations stated in the complaint must be taken as true; and it should be given a liberal construction with a view to permit all reasonable inferences to be drawn in favor of finding that a valid cause of action has been stated. *Jezo v. Jezo* (1963), 19 Wis. 2d 78, 119 N. W. 2d 471. Even when this complaint is so viewed, the appellants have failed to set forth facts sufficient to state a cause of action.

The general rule regarding the duty of an insurance company to send premium or lapse notices to the assignee of an insurance policy is set forth with clarity in 5 Couch, *Insurance* 2d, p. 677, sec. 30.143. It is there stated:

"In the absence of any statute or contract of the insurer to the contrary or conduct of the insurer giving rise to a duty to notify the assignee, there is no duty on the insurer to notify an assignee of the policy of premiums or assessments due thereon. . . ."

That this is the prevailing view is evidenced by the numerous decisions in which courts have so held.[1] Both parties are in substantial agreement that no Wisconsin statute is applicable to the facts of this case, or that there is an explicit provision in either the policy or the assignment which calls for premium or lapse notices to be sent to the assignees. The appellants contend, however, that by virtue of the fact that the assignor-insured was entitled to notice of premium and lapse notices, this entitlement was transferred to them by certain language contained in the assignment. They further contend that by the totality of its conduct, National consented to this assignment and cannot now seek to avoid its obligation to the assignees of the policy.

Because of appellants' contentions, a review of certain portions of the policy and assignment is in order.

[1] *Goldheim v. Connecticut Mut. Life Ins. Co.* (D. C. D. C. 1959), 172 Fed. Supp. 195, affirmed at (D. C. Cir. 1960), 274 Fed 2d 752; *Massachusetts Mut. Life Ins. Co. v. Pinellas Central Bank & Trust Co.* (D. C. Fla. 1965), 175 So. 2d 245; *Standard Fire Ins. Co. v. United States* (5th Cir. 1969), 407 Fed. 2d 1295; *Gleason v. Massachusetts Mut. Life Ins. Co.* (D. C. Ohio 1942), 43 Fed. Supp. 824; *Franklin Life Ins. Co. v. American Nat. Bank* (1905), 74 Ark. 1, 84 S. W. 789; *Presentation Sisters, Inc. v. Mutual Benefit Life Ins. Co.* (1971), 85 S. D. 678, 189 N. W. 2d 452; *Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville* (1903), 115 Ky. 757, 74 S. W. 1066; *Scheele v. Lafayette Bank* (1906), 120 Mo. App. 611, 97 S. W. 621.

Question No. 25 of the application for insurance, which by specific provision was made a part of the contract of insurance, asked: "To whom shall premium notices be sent?" Following the question, and in smaller print, appeared the words: "Insured," "Owner," and "Applicant," with a small box provided directly behind each. The box behind the word "Insured" was checked; and, in a space provided below, the insured, Ralph R. Stowe, listed his address. The trial court found that the insured was entitled to notice; and the finding is not disputed.

Paragraph D of the assignment states that it is made as collateral security for all liabilities owed to the assignees "either now existing or that may hereafter arise in the ordinary course of business between" the assignors and the assignees. By the terms of the assignment, Stowe assigned to appellants "all claims, options, privileges, rights, title and interest" which he had in the policy, except his right to collect disability benefits; his right to change the beneficiary; and his right to elect an optional mode of settlement.

Under Paragraph E, the assignees agreed that they "will not exercise either the right to surrender the Policy" except to pay premiums, or their "right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due."

Appellants particularly rely on the language of Paragraph G, which states:

"The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, *but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured,* shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum." (Emphasis supplied.)

Appellants' first argument that because the assignment transferred to them all "claims, options, privileges, rights, title and interest," they were thereby entitled to lapse notices, is based on their misconception that the assignment here involved was absolute and unconditional, rather than as collateral security for outstanding debts. In support of their position, appellants cite *McQuillan v. Mutual Reserve Fund Life Asso.* (1902), 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925. In *McQuillan,* the insured was a public charge; and he assigned his life insurance policy to the city of Eau Claire to reimburse the city for relief payments both present and future. Appellants rely on as controlling the following language from *McQuillan, supra,* at page 673:

". . . When the assignment of the policy was perfected, the city became substituted, for most purposes, for McQuillan and for his wife as well. All communications thereafter, by the association, affecting the validity of the insurance contract, were due to the new party [the city of Eau Claire], and it was not affected by any made to McQuillan any more than it would have been by communications made to a mere stranger to the contract. . . ."

What distinguishes *McQuillan* from the case at bar is that there the city of Eau Claire was the sole and unconditional owner of the policy and under the conditions of its ownership it was expected to pay all of the premiums on the policy.

This distinction was followed most recently in *Presentation Sisters, Inc. v. Mutual Benefit Life Ins. Co., supra,* at page 684, 189 N. W. 2d at 455, where the Supreme Court of North Dakota relied on 45 C. J. S., *Insurance,* p. 460, sec. 616, where it is there stated that:

" 'In case of an assignment of the policy the notice should be given to the assignee if the assignment is an unqualified and absolute one; but if the assignment is made merely as collateral the notice should be given to

the assignor, and not the assignee, although the assignment is made with the knowledge or consent of insurer. . . .' "

Appellants' argument that by recordation of the assignment on a form provided for that purpose the respondent was contractually bound to give premium or lapse notices to the assignees has no merit. National returned no acknowledgment, nor would it appear that there was any other act or omission on its part which would evidence its intent to be contractually bound to give notice to the assignees.

It is clear that in relying on Mr. Stowe to pay the premiums the appellants were not relying on the insurer to send them premium notices. The policy was issued on August 31, 1967, and the assignment was made on November 13, 1967. The insured did not die until two and one-half years after the policy was issued. Clearly, it had to be apparent to the appellants that before Mr. Stowe's death premiums were falling due and that they were not receiving such notices. Appellants could have protected themselves by requiring Mr. Stowe to submit evidence of payment to them each time a premium fell due.

In light of the fact that the policy provided for a thirty-one-day grace period after the due date of the premium in which the policy would still be in force, it would have been easy for the appellants to either make inquiries of National as to whether premiums had been paid, or at least attempt to enter into a separate agreement with it, whereby National would send them notice of the periodic premiums due, together with notice of any default.

We conclude that the trial court's June 16, 1971, order sustaining respondent's demurrer and August 13, 1971, order denying appellants' motion to review must be affirmed.

*By the Court.*—Orders affirmed.