AMERICAN WESTERN LIFE INSUR-
ANCE COMPANY, Plaintiff
and Respondent,

v.

Vonice W. HOOKER and Helen M. Mallard, aka Helen Margurite Hooker, Defendants (First Defendant is Respondent; Second Defendant is Appellant).[1]

No. 16596.

Supreme Court of Utah.

Nov. 28, 1980.

1. We do not here depict the extensive caption of claims adopted by all parties on their briefs, but rather give a simplified caption. Explanation of these claims is given in the opinion.

Earl J. Peck, Joseph L. Henriod, and Stephen L. Henriod, Salt Lake City, for Hooker.

Pete N. Vlahos and Ronald W. Perkins of Vlahos, Knowlton & Perkins, Ogden, for Mallard.

John P. Ashton and John B. Maycock, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

In 1972 Ronald Hooker (hereafter "Ronald"), now deceased, took out a policy of decreasing term life insurance, policy # 43476 (hereafter "policy 43") with Respondent American Western Life Insurance Company (hereafter "American Western"). In 1973 he purchased another decreasing term policy # 44498 (hereafter "policy 44") from American Western. His then wife, Helen Hooker, now Respondent Helen Mallard (hereafter "Helen") was named as beneficiary under both policies.

In 1974, Ronald executed forms supplied by American Western captioned "Change of Policy Ownership Designation," for each policy. In each he named his first wife, Helen, as owner "so that all rights, privileges, title and interests in said polic[ies] shall be transferred to" her. Both forms were received by American Western on July 5, 1974, and according to notations on each, "[c]hange recorded and copy attached as endorsement on policy" on July 9, 1974. By letter dated July 9, 1974, American Western informed Ronald that the change of ownership of policy 43 had been properly recorded. No such notice was ever sent covering policy 44. After Ronald's death American Western discovered that the change form for policy 44 had been erroneously filed in the folder for policy 43. Helen at all times has had both policies in her possession.

In December, 1975, Ronald and Helen were divorced. Though the decree of the divorce apparently contained no provision regarding the maintenance of insurance by Ronald, he did indicate to Helen that he would pay the premiums on the various insurance policies. In the spring of 1976 Helen remarried, and later that year Ronald married Respondent Vonice Hooker (hereafter "Vonice").

In December, 1976, the premium due on policy 43 was not paid and the policy lapsed. That same month he executed another form provided by American Western entitled "Change of Beneficiary Agreement" and named Vonice as the new beneficiary under policy 44. On December 17, 1976, American Western confirmed that the beneficiary under policy 44 had been changed.

On September 17, 1977, Ronald died. Thereafter Vonice filed a lost policy affidavit and a claim under policy 44. She was paid $67,500 by American Western on September 27, 1977. In October, Helen, through her attorney, made a claim under policy 43. Upon checking that file American Western discovered the change of ownership form covering policy 44.

On October 21, 1977, American Western wrote to Vonice stating that:

Since this change [of beneficiary under policy 44] without the new owner's [Helen] signature is considered null and void the claim paid by us to you was in error.

We regret that due to these unfortunate circumstances we have no alternative but to ask for return of the $67,500.00 paid to you.

On October 25, 1977, American Western filed its verified complaint naming Vonice and Helen as defendants and seeking a determination as to who was entitled to the proceeds of policy 44. Subsequently an amended complaint was filed which, in addition to the relief sought in the original complaint, prayed that if the court should find that Helen was entitled to the $67,500, Vonice should be ordered to return the money she had received.

In her answer to the amended complaint, Vonice set up a counterclaim against American Western. Helen also answered the complaint and counterclaimed against American Western for the proceeds of policy 44 and, additionally, for payment under policy 43 which, she alleged, should not have been allowed to lapse without American Western giving her, as owner of the policy, notice that the premium had not been paid. Helen also cross claimed against Vonice and filed a third-party complaint against Vonice as the personal representative of the Estate of Ronald Hooker. Both the cross claim and third-party complaint sought recovery of the proceeds of policy 44 from Vonice.

After extensive discovery in the form of interrogatories and depositions, each of the parties moved for summary judgment on the various claims presented. The District Court ruled on these motions as follows:

1. It granted Vonice's motion for summary judgment against American Western and dismissed American Western's complaint.

2. It granted Vonice's motion for summary judgment against Helen and dismissed Helen's cross claim.

3. It granted Vonice's motion for summary judgment as personal representative of Ronald's estate against Helen and dismissed Helen's third-party complaint.

4. It denied Helen's motion for summary judgment against American Western, granted American Western's motion against Helen and dismissed Helen's counterclaim against American Western.

On appeal Helen does not attack the dismissal of her third-party complaint against Vonice as personal representative of Ronald's estate, and so that portion of the judgment must stand. Helen seeks a reversal of the other judgments against her arguing that she should be paid the proceeds of policy 44 by American Western because of her status as owner of the policy, or alternatively, under a theory of equitable assignment. She further contends that she is entitled to a jury trial on the issue of whether American Western should have sought her out as owner of policy 43 so that she could make the premium payments on that policy to avoid a lapse for nonpayment of premiums.

■ We address first the issues connected with policy 44. In its memorandum decision, the District Court stated that its decision was governed by a provision of the policy in question entitled "Control of Policy," which states:

> During the minority of the Insured the right to exercise all privileges under this Policy and to agree with the Company as to any change in or amendment to this Policy, shall vest successively, during their respective lifetimes, in the Owner, the Beneficiary, the Contingent Beneficiary, if any, and the Insured. After the Insured has attained his majority, such rights shall vest solely in the Insured unless otherwise provided in the Policy.[2]

The Court interpreted the final sentence to mean that "the control of the policy is in the insured as to any changes." In the face of the clear terms of the "Change of Policy Ownership Designation," we cannot agree with this interpretation.

The change designation recites:

2. Of course, the insured here, Ronald, was not a minor and the last sentence is applicable to him.

AMERICAN WESTERN LIFE INSURANCE COMPANY is hereby requested to endorse Policy No. 44498 on the life of Ronald Dean Hooker the insured, so that all rights, privileges, title and interests in said policy shall be transferred to Helen M. Hooker—wife.

While it is true that the policy reserves the right to exercise all privileges thereunder to the insured, it is also true that the policy provides for assignment, and the form provided by the company to effect such an assignment clearly contemplates the transfer of *all* rights under the policy to the new owner.

Furthermore we do not believe that American Western's mistake in misfiling the change in ownership for policy 44, coupled with its failure to confirm that change, in any way detracts from the efficacy of the change. Ronald did all that was within his power to effect the change by filling out and submitting the forms provided by American Western. All that remained to be done by American Western was to record the change—which it did—even though the completed form was misfiled.[3]

However, as another ground for denying the validity of the change in ownership, respondents argue that the change, though absolute on its face, in reality was intended to be only conditional. On the basis of the deposition testimony of Helen, respondents argue that the change was made on the mistaken assumption that unless Helen were the owner of the policies, any proceeds payable thereunder would go into the estate of Ronald, and therefore be subject to probate. American Western asserts that as the change was motivated by a mistake of law, the change need not be considered absolute. Further, the testimony of Helen that the reason the *policies* were taken out was to insure that a mortgage covering her home would be paid off shows, say respondents, that the *change in ownership* of the policies was intended as security only. In such a situation—and since the debt was paid off and the mortgage discharged—respondents maintain that the incidents of ownership had reverted to Ronald as of the time he attempted to change the beneficiary of policy 44.

We are unconvinced by either argument. Respondents go too far in connecting the original purpose for taking out the insurance policies in question—which purpose is irrelevant and speculation in any event—with the purpose for the *assignments.* The mere fact that Helen and Ronald were of the mistaken opinion that Helen had to be owner of the policies in order to avoid probate of the proceeds does not impugn the absolute character of the change. Indeed, that basis provides strong evidence beyond the terms of the assignment itself that the assignment was intended to be absolute. As to the argument that the change amounted to no more than an assignment for security, the District Court did not address the issue in its memorandum decision, and there is no evidence which would support the conclusion that the change was conditional. We therefore hold that the District Court erred in concluding that Helen was not entitled, as the owner of policy 44, to the proceeds thereunder.

The proceeds of policy 44 were paid to Vonice. Thereafter, claiming a "clerical error," American Western demanded repayment of the proceeds. Vonice argued in the District Court and here on appeal that if it is determined that the proceeds should have been paid to Helen then American Western should be estopped to demand repayment from Vonice. We agree.

■ It is true that if an insurer has made a payment under a mistake of fact that the terms of an insurance contract require such payment, the insurer is entitled to restitution, at least where the payee has not so changed his position that it would be inequitable to require him to make full pay-

---

**3.** Cf., *Wentworth v. Equitable Assurance Co.,* 65 Utah 581, 238 P. 648 (1925); *Novosel v. Sun Life Assurance Co. of Canada,* 49 Wyo. 422, 55 P.2d 302, rehearing denied 57 P.2d 110 (1936); *Allen v. Abrahamson,* 12 Wash.App. 103, 529 P.2d 469, 78 A.L.R.3d 461 (1974). While all of these cases dealt with an attempted change in *beneficiary,* we consider the same reasoning to apply to situations where a change in *ownership* of a life insurance policy is involved.

ment.[4] However, in this case we believe principles of equitable estoppel control.

Citing *Benner v. Industrial Acc. Comm.*,[5] this Court in *Rice v. Granite School District*[6] stated:

To create an equitable estoppel, "it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power by which he might have retrieved his position and saved himself from loss." \* \* \*[7] (Emphasis in original.)

■ The record here reflects that prior to December, 1976, Ronald wanted to have his second wife, Vonice, named as beneficiary of an insurance policy on his life. To that end he discussed his options with Martin Reeder, an insurance agent for American Western. According to Mr. Reeder, Ronald inquired whether the beneficiary of policy 44 could be changed or if a new policy would have to be taken out naming Vonice as beneficiary. As a result of these discussions, on December 9, 1976, Ronald executed a Change of Beneficiary Agreement provided by American Western. On December 19, 1976, American Western notified Ronald by mail that "your requested change of beneficiary has been properly recorded..."

American Western clearly represented to Ronald that he could designate a new beneficiary under policy 44 and confirmed such a change. Ronald was entitled to rely on that representation and did so rely to his detriment; that is, he did not secure other insurance naming Vonice as beneficiary. American Western is therefore estopped to deny that the change in beneficiary under policy 44 was accomplished even though that change could not be made without the consent of the policy owner, Helen.[8]

The theories under which Helen and Vonice are each entitled to $67,500 are separate and distinct, and so a recovery by each against American Western, under the circumstances here, is legally justified.[9]

We turn now to a consideration of policy 43. Helen maintains that as owner of that policy she was entitled to notice of premiums due so that she could pay the same in order to keep the policy in force. In the absence of such notice, she argues, American Western could not cancel the policy for failure to pay the premium due.

■ American Western counters that it was not required, either by the terms of the policy or by statute, to give any notice whatever. We agree generally that in the absence of a policy provision or statute requiring notice of premium due, or proof of a course of dealing establishing a custom of sending such notice, notice need not be given as a prerequisite to a policy lapsing for nonpayment of premium. We do not agree, however, that there was no requirement in the policy here that notice of premium be sent.

■ The application for insurance is a part of the policy.[10] Item 12 of the application for policy 43 states "SEND PREMIUM

---

4. See, e. g., *Aetna Casualty & Surety Co. v. Melancon*, 348 So.2d 717 (La.App.1977); *Aetna Life Insurance Co. v. Nix*, 85 N.M. 415, 512 P.2d 1251, 79 A.L.R.3d 1109 (N.M.1973); *Hodges Food Stores, Inc. v. Gulf Insurance Co.*, 441 S.W.2d 309 (Tex.Civ.App.1962); and, generally, 44 Am.Jur.2d, Insurance, § 1806.

5. 26 Cal.2d 346, 349, 159 P.2d 25, 26 (1945).

6. 23 Utah 2d 22, 456 P.2d 159 (1969).

7. Id., 23 Utah 2d at 27, 456 P.2d at 162. See, also, *Morgan v. Board of State Lands*, Utah, 549 P.2d 695 (1976); *Buchanan v. Switzerland General Insurance Co.*, 455 P.2d 344 (Wash. 1969); *Marett v. World Fire & Marine Ins. Co. of Hartford, Conn.*, 160 P.2d 664 (Kan.1945); 43 Am.Jur.2d, Insurance, § 1053.

8. *Phillips v. Continental Assurance Co.*, 210 Pa.Super. 178, 231 A.2d 422 (1967).

9. Cf., *Trowbridge v. Prudential Insurance Co. of America*, 322 F.Supp. 190 (S.D.N.Y.1971), and cases cited therein at 193.

10. The policy itself so provides:
This Policy and the Application herefore, a copy of which is attached hereto and made a part hereof, shall constitute the entire contract of insurance between the parties hereto. This provision is in compliance with § 31–22–4, Utah
Code Ann., 1953, as amended.

NOTICE TO:" which is followed by the words "HOME", "BUSINESS", "OWNER" and "OTHER". We therefore conclude that a fair interpretation of the policy shows that premium notices were required to be sent.[11]

Further the record reflects that no such notice was sent for the premium falling due in December, 1976. On March 21 or 23, 1977, American Western did send a notice to Ronald that policy 43 *had lapsed* for nonpayment of premium. That notice was returned to American Western marked "RETURN TO SENDER, UNDELIVERABLE AS ADDRESSED NO FORWARDING ORDER." This notice, however, was clearly *not* a premium notice.

Based on the record before us, therefore, American Western was obligated to send a premium notice and failed to do so. And while the terms of the policy provide that the policy lapses upon expiration of the thirty-one day grace period, in this case the failure to send a premium notice prevents that from happening. Based on this disposition we do not believe remand for trial on this issue, though requested by Helen, is necessary.

Helen is entitled to the death benefit payable under policy 43 as of the date of Ronald's death, less the premium due and earned as of that date.

Reversed and remanded for entry of judgment in accordance with this opinion. Costs to Helen.

CROCKETT, C. J., and MAUGHAN, J., concur.

STEWART, Justice (dissenting):

I agree with the majority opinion that all rights under the policy can be assigned to a newly-designated owner, but I do not join in the conclusion regarding the absolute character of the policy change in the instant case. Although the form provided by American Western Life Insurance Company contemplates the transfer of all rights un-

der the policy to an assignee, the mere form of the policy is not conclusive on the question of ownership. *Moser v. Moser*, 117 Ariz.App. 312, 572 P.2d 446 (1977). Parol evidence is admissible to show the true nature of an assignment, though absolute in form. *Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149 (1952). As stated in *Boyle*:

"The majority of courts at the present time, however, are prone to look with reluctance upon absolute assignments and hold that if the assignment, though absolute in form, was intended only as collateral security, it will have only such effect. Thus, one having an equitable claim may show by parol that an apparently absolute assignment was intended as security, and such showing, whether demonstrated by written agreement or parol evidence, will be conclusive. And such evidence is admissible though contrary to the clear and unambiguous language of the assignment." 2 Appleman, Insurance Law & Practice, Sec. 1312, pp. 759–761. "And it has also been held that the purpose of the written assignment may be shown by parol, although the assignment is absolute in terms." 2 Cooley's Briefs on Insurance, 2d Ed., p. 1839. "It is generally considered that parol evidence is admissible where it is offered, not for the purpose of varying the terms of a written contract or instrument, but for the purpose of explaining and showing the true nature and character of the transaction evidenced thereby * * *." 32 C.J.S., Evidence, § 1015, p. 1037, citing *Service Purchasing Co. v. Breenan*, 226 Mo.App. 110, 42 S.W.2d 39. [253 S.W.2d at 155–56.]

The record in the instant case reveals that the first insurance policy taken out was purchased by Ronald shortly after mortgaging the house which his wife, Helen, had previously owned free and clear. The mortgage on Helen's house financed the construction of an apartment building. The second policy was purchased in conjunction with a further loan against both

---

11. See, *Sorenson v. National Life Insurance Co.*, 56 Wis.2d 92, 201 N.W.2d 510, 68 A.L.R.3d 354 (1972).

Helen's house and the apartment building to finance a new store for Ronald's appliance business. According to Helen's testimony, the insurance policies were taken out to insure repayment of the two mortgages on her home in the event of her husband's death.

Operating under the misconception that unless Helen was the owner, the proceeds of the policies would go into probate, Helen was made the owner of the policies. Thus, evidence suggests that Helen's position as beneficiary and owner of the policies was established in order to assure that she would be paid back the money borrowed on her home. That evidence could establish that an otherwise apparently absolute assignment of insurance was in fact intended as security, see *Boyle v. Crimm, supra,* and that Ronald's payment of the debts in full would extinguish that security interest. See *Green v. American National Insurance Co.,* Tex.Civ.App., 452 S.W.2d 1 (1970); *Albrent v. Spencer,* 275 Wis. 127, 81 N.W.2d 555 (1957). If the "assignment" of the policy was intended as security for a debt, as contended by American Western Life Insurance Company, the transfer of rights would not divest the insured of his ownership interest. Therefore, payment of the debt would discharge the lien securing it and cause the policy to continue in effect as if there had been no assignment, *Green v. American National Insurance Co., supra; Males v. New York Life Insurance Co.,* 48 A.D.2d 50, 367 N.Y.S.2d 575 (1975), and Ronald would be free to change beneficiaries.[1]

Although appellant argues the assignment was binding and not subject to change, the record presents a dispute over its intended purpose. Since a document effecting an absolute transfer on its face may be shown by parol evidence to have been given for security purposes only, the evidence supporting the disputed issue of intent is admissible. *Kjar v. Brimley,* 27 Utah 2d 411, 497 P.2d 23 (1972). The presence of this disputed issue in the instant case renders summary judgment inappropriate. Rule 56(c) of Utah Rules of Civil Procedure; *Kjar v. Brimley, supra.* See also *Riggle v. Daines Manufacturing Company,* 20 Utah 2d 391, 438 P.2d 808 (1968).

I have further difficulty with the majority opinion's treatment of the notice issue. Helen argues that there can be no forfeiture of Policy 43 because she did not receive notice of premiums due. She does not argue that no notice was sent to Ronald, nor does the record answer the question whether in fact a notice of premium due was sent to Ronald in December 1976. The portion of the policy which requires the sending of premium notices, and upon which the majority opinion relies to find the requisite duty, allows for alternative recipients of the notice other than the policy owner. Thus, the majority opinion's conclusion that premium notices were required does not answer the remaining issue—that is, was Helen the party intended to receive them.

The fact that Ronald received premium notices subsequent to the assignment to Helen, and the fact that Helen agreed to have Ronald continue paying the premiums after the divorce, along with Helen's failure to notify the insurance company in any way of her change of address after the divorce, indicate her acquiescence in Ronald's remaining the appropriate recipient of premium notices. The majority opinion's conclusion that American Western failed to send a premium notice to Ronald is not supported by the record. Whether Ronald received notice or not, however, Helen's argument that she was personally entitled to notice must fail.

For these reasons I respectfully dissent and would remand the case for trial.

HALL, J., concurs in the dissenting opinion of STEWART, J.

---

1. As Ronald's wife, Helen had an insurable interest other than security on a debt; and the discharge of the debt would not automatically invalidate her status as beneficiary. However, the discharge of the debt and the removal of the absolute character of the transfer, if found to have merely served the purpose of securing the debt, would provide Ronald an opportunity to change her status as beneficiary.